*Name, Address of Party(ies)*
Kevin Mason, Marcus Mason, Barney Mason, Thalia Laskey, Shedrick Mason, Billy Mason, Barbara Charles, Kelvin Mason, Kelvin Mason, Jr., Allen Mitchell, James Mason, Natalee Miller, Grant Perryman, and Descendants of the Creek Freedmen of Oklahoma
5280 Duke Street, Apt. 104
Alexandra, VA 22304

Mailing Address: 14771 Green Lawn Avenue
Moreno Valley, CA 92555-5744

In Pro se

FILED
APR 24 2012
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN MASON
14771 GREEN LAWN AVE.,
MORENO VALLEY, CA 92555-5744
Phone: (951) 442-4368,

MARCUS MASON
27693 LAFAYETTE WAY
MORENO VALLEY, CA 92555
Phone: (818) 396-2985,

KELVIN MASON, JR.
5280 DUKE STREET, Apt. 104
ALEXANDRA, VA 22304
Phone: (951) 442-4368,

BARNEY MASON
27846 GLADSTONE
MORENO VALLEY, CA 92555
Phone: (951) 489-9515,

THALIA LASKEY
26637 SANTA ROSA DRIVE
MORENO VALLEY, CA 92555
Phone: (323) 574-4023,

SHEDRICK MASON
27846 GLADSTONE
MORENO VALLEY, CA 92555
Phone: ( 951) 489-2745,

BILLY MASON
3579 TERRACE AVENUE
FRESNO, CA 93722
Phone: (559) 906-3038,

Case. 1:12-cv-00668
Assigned To : Boasberg, James E.
Assign. Date : 4/24/2012
Description: Pro Se Gen. Civil

**COMPLAINT**

Rec'd corrected papers

RECEIVED
Mail Room
APR 16 2012
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

BARBARA CHARLES
26637 SANTA ROSA DRIVE
MORENO VALLEY, CA 92555
Phone: (323) 574-1789,

ALLEN MITCHELL
23811 CABRILLO AVE.
TORRANCE, CA 90501
Phone: (310) 530-3186,

KELVIN MASON
1136 W. FIAT STREET
TORRANCE, CA 90502
Phone: (562) 415-5596,

JAMES MASON
123 CAPRI CIRCLE
HERCULES, CA 94547
Phone: (510) 799-3080,

NATALEE MILLER
7046 A STREET
TACOMA, WA 98408
Phone: (253) 377-5316,

GRANT PERRYMAN
260 WATERVIEW TERRACE
VALLEJO, CA 94591
Phone: (707) 319-5903,

and DESCENDANTS of the MUSCOGEE CREEK FREEDMEN of OKLAHOMA
14771 GREEN LAWN AVENUE
MORENO VALLEY, CA 92555-5744
Phone: (951) 442-4368,

Plaintiffs,

vs.

KEN SALAZAR, Secretary of the United States Department of the Interior
1849 'C' STREET NW
WASHINGTON, D.C. 20240
Phone: (202) 208-3100,

UNITED STATES DEPARTMENT OF THE INTERIOR –B.I.A.
1849 'C' STREET NW
WASHINGTON, D.C. 20240
Phone: (202) 208-3100,

MUSCOGEE (CREEK) NATION OF OKLAHOMA
1008 E. EUFALA
OKMULGEE, OK 74447
Phone: (918) 732-7789,

CHIEF GEORGE TIGER, Creek Nation, Individually and in His Official Capacity
1008 E. EUFALA
OKMULGEE, OK 74447
Phone: (918) 295-9720,

and

CREEK TRIBAL LEADERS, Individually and in their Official capacity
1008 E. EUFALA
OKMULGEE, OK 74447
Phone: (918) 295-9720,

and

DOES 1 THROUGH 5

Defendants.

Plaintiffs, KEVIN MASON, MARCUS MASON, BARNEY MASON, THALIA LASKEY, BILLY MASON, SHEDRICK MASON, KELVIN MASON, KELVIN MASON, JR., BARBARA CHARLES, JAMES MASON, NATALEE MILLER, ALLEN MITCHELL, GRANT PERRYMAN, and Descendants of the MUSCOGEE CREEK FREEDMEN OF OKLAHOMA, citizens of the Muscogee Creek Nation of Oklahoma, whom are direct descendants of individuals enrolled on the Dawes Commission Rolls of the Muscogee Creek Tribe, (see Exhibit 1), under the inclusive Freedmen category of the Dawes Commission Rolls (hereinafter referred to as "Freedmen"), by and for themselves, the undersigned, for their Complaint against KEN SALAZAR, Secretary of the United States Department of the Interior, and the UNITED STATES DEPARTMENT OF THE INTERIOR hereinafter referred as ("DOI") and the Bureau of Indian Affairs ("BIA") hereinafter referred as ("BIA"), which is an agency of the DOI, allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs, individual citizens of the Muscogee Creek Nation of Oklahoma, bring this civil suit for Declaratory and Injunctive Relief arising under the Constitution and laws of the United States, to vindicate the rights of a long-oppressed and disadvantaged people. Plaintiffs bring this action to redress long-standing and invidious racial discrimination against them by the Bureau of Indian Affairs; and thus, plaintiffs request the Court to order the Department of Interior/Bureau of Indian Affairs to sue the Creek Nation on behalf of the Creek Freedmen's because the United States is a sovereign nation, as well as, the Creek Nation, however, the United States can be sued, as well as, the Creek Nation, per case (U.S. vs. Creek Nation, 295 U.S.103(1935) Argued October 8, 1934, Decided April 29, 1935).

2. This discrimination has caused exclusion of the Freedmen's descendants from their right to vote in Tribal Elections, and denied all other benefits, in which they are entitled to, and further, denied descendants the right to receive an application to enroll as Freedmen descendants.

3. On November 12, 2009, the Mason Family was erroneously denied Citizenship enrollment into the Muscogee Creek Nation by the Citizenship Board. (See Exhibit 2). Other plaintiffs were also denied enrollment applications, to apply for citizenship by the same Citizenship Board.

In 1979, the Muscogee Creek Nation amended its Constitution, and decided that it would exclude all Freedmen descendants from being citizens and from their entitlements, which was illegal under the 1866 Treaty between the United States and the Muscogee Creek Nation, which provided citizenship protections to the Muscogee Creek Freedmen and their descendants that were afforded the Muscogee Creek Freedmen in the Treaty of 1866. (See Exhibit 3).

4. The BIA's determination to not recognize the Muscogee Creek Freedmen's descendants through the 1979 Amendment to its Constitution prevented the Muscogee Creek Freedmen's citizens from being allowed to exercise their right to vote which is a breach of the BIA's fiduciary duty.

**PARTIES**

5. Plaintiffs KEVIN MASON, MARCUS MASON, BARNEY MASON, THALIA LASKEY, BILLY MASON, SHEDRICK MASON, KELVIN MASON, KELVIN MASON, JR., BARBARA CHARLES, JAMES MASON, NATALEE MILLER, ALLEN MITCHELL, GRANT PERRYMAN, and Descendants of the MUSCOGEE CREEK FREEDMEN OF OKLAHOMA, citizens of the Muscogee Creek Nation of Oklahoma are direct descendants of:

| | |
|---|---|
| JOE aka JOSEPH McGILBRAY, | [Loyal Creek No. 680] |
| JUDY GRAYSON-McGILBRAY, | [Dunn Roll No. 1397] |
| QUASH McGILBRAY, | [Census Card No 28, Roll 124] |
| NED THOMPSON, | [Census Card No. 798, Roll 3138] |
| OLD SUTUM McGILBRAY, | [Census Roll No. 10, also listed on |
| QUASH McGILBRAY | [Census Card 27] |
| COW TOM | |
| GEORGE LEONARD PERRYMAN, I, | [Dawes Roll No. 932] |
| SAMUEL MORRIS, | [Loyal Creek No. 645] |
| LUCINDA SANGO-MORRIS, | [Dunn Roll No. 1724] |
| JOHN M. TAYLOR, | [Dawes Roll No. 193] |
| HARRIET SANGO-MORRIS-TAYLOR, and | [Dawes Roll No. 194] |
| ANNIE TAYLOR-CRAIG, | [Dawes Roll No. 196] |

who are named in **ARTICLE II. *'PERSONS TO WHOM CITIZENSHIP HAS BEEN GRANTED,'* Of the Reports of Committees of the Senate of the United States for the First Session of the Forty-Ninth Congress of 1885-1886**. (See Exhibit 4)

**JURISDICTION AND VENUE**

6. The Court has jurisdiction over Plaintiffs' claims, pursuant to 28 U.S.C. §§1331, 1345 and 1348. Jurisdiction to review agency action is invoked pursuant to the Administrative Procedure Act the ("APA"), 5 U.S.C. §§ 702-703. Declaratory Relief is sought pursuant to 28 U.S.C. §§ 2201-2202.

7. This action arises under the Constitution and laws of the United States, including, but not limited to, the Fifth Amendment to the Constitution of the United States, the Treaty with the Cherokee Indians, July 19, 1866, 14 Stat. L., 799 ("1866 Treaty"), Pub. L. No. 91-495, 84 Stat. 1091 (the "1970 Principal Chiefs Act)), the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301 et seq.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e), as Defendant KEN SALAZAR, Secretary of the United States Department of the Interior and Defendant DOI resides in this District.

9. The United States has waived its and Defendant KEN SALAZAR, Secretary of the United States Department of the Interior sovereign immunity to the claims herein by virtue of (without limitation), the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 702-703 and the United States' fiduciary and trustee obligations towards the Muscogee Creek Nation and its citizens. Howbeit, plaintiffs' challenge the validity of sovereign immunity, due to the decision of case (U.S. vs. Creek Nation, 295 U.S.103(1935) Argued October 8, 1934, Decided April 29, 1935). Thus, the United States can be sued, as well as, the Creek Nation. Defendant KEN SALAZAR, Secretary of the United States Department of the Interior, in turn, has acted beyond his statutory authority by allowing his subordinate officers to violate the laws and the Constitution of the United States, as alleged herein, and thus has no sovereign immunity, under the doctrines established Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908), Larsen v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S. Ct. 1457 (1949) and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).

10. In this action Plaintiffs seek a declaratory judgment under the Declaratory Judgment Act, 28

U.S.C. § 2201, setting forth their rights because of Defendants' violations of the Constitution and laws of the United States, and a declaration that the United States (including Defendants and the BIA), in its capacity as fiduciary and trustee, may not approve any act by the Muscogee Creek Nation in derogation of the rights of its Freedmen citizens or its descendants.

11. In addition, Plaintiffs seek a finding, pursuant to the APA that Defendants conduct has been arbitrary, capricious, and an abuse of discretion, and not in accordance with law.

12. Plaintiffs also request that a Trustee be appointed, to ensure that their civil rights are protected, as was done in the late 1800's.

## BACKGROUND

13. In the early 19th century, the United States Indian policy focused on the removal of the Muscogee and the other Southeastern Tribes to areas beyond the Mississippi River. In the removal treaty of 1832, Muscogee leadership exchanged the last of the cherished Muscogee ancestral homelands for new lands in Indian Territory (Oklahoma). Thus, many of the Upper and Lower Muscogee (Creek) had settled in the new homeland after the Treaty of Washington in 1827, but for the majority of Muscogee people, the process of severing ties, to a land they felt so much a part of proved impossible. The U.S. Army enforced the removal of more than 20,000 Muscogee (Creeks) to Indian Territory in 1836 and 1837.

14. Thus, in the new Nation, the Lower Muscogee's located their farms and plantations on the Arkansas and Verdigris rivers. The Upper Muscogee's re-established their ancient towns on the Canadian river and its northern branches. The tribal towns of both groups continued to send representatives to a national Council, which met near High Springs. Then the Muscogee Nation as a whole began to experience a new prosperity.

15. The American Civil War was disastrous for the Muscogee people. The first three battles of the War in Indian Territory occurred when Confederate forcers attacked a large of neutral Muscogee (Creeks) led by Opothle Yahola. For the majority of the Muscogee people, desired neutrality proved

impossible. Eventually Muscogee citizens fought on both the Union and Confederate sides. The Reconstruction Treaty of 1866 required the cession of 3.2 million acres – approximately half of the Muscogee domain.

16. Important to note, in 1867, the Muscogee people adopted a written Constitution (in which, Plaintiffs' ancestors are named – (See Exhibit 5), which provided for a Principal Chief and a Second Chief, a judicial branch, and a Bicameral Legislature composed of a House of Kings and a House of Warriors. A new capital was established in 1867 on the Deep Fork of the Canadian at Okmulgee.

17. We, the Plaintiffs are direct descendants of Joe McGilbray. Joe McGilbray was a Loyal Creek #680, who was forced to abandon his home and possessions in the State of Georgia. He was a Blacksmith, who was a free man, prior to the Emancipation to free the Slaves. It was certified by the BIA that he was whole blood Muscogee Creek Indian; owned a house with 15 horses, 41 cattle, 70 hogs, and 150 bushels of corn, 25 bushels of potatoes, furniture, and blacksmith tools. In August 1863, he enlisted and served valiantly as a soldier in the (United States) First Indian Regiment during the war. (See Exhibit 6)

**WHEREFORE,** Plaintiff's respectfully pray for judgment granting declaratory and injunctive relief as follows:

1. Declaring that the United States government (including Defendants and the BIA), in its capacity as fiduciary and trustee, may not approve any election or other act by the Muscogee Creek Nation in derogation of the rights of its Freedmen citizens,
2. Order the Creek Nation to distribute and process Creek Freedman applications for citizenship Enrollment, and thereby, granting citizenship to the Creek Freedman descendants who have documented proof of ancestors listed on the final Freedmen Dawes Roll of 1898-1906,
3. Directing the BIA to appoint a Trustee to ensure the civil rights of the Freedmen are not violated in the future,
4. Awarding Plaintiffs their reasonable punitive and monetary damages, attorney fees, costs and

disbursements from the parties, including but not limited to, recovery of fees, and costs from the United States, pursuant to the Equal Access to Justice Act,

1. Awarding such other relief as accords with Plaintiffs' causes of action herein and as the Court deems just and proper.

Dated: March 14, 2012

By: Kevin Mason
14771 Green Lawn Avenue
Moreno Valley, CA 92555-5744
(951) 442-4368

By: MARCUS MASON
27693 LAFAYETTE WAY
MORENO VALLEY, CA 92555
Phone: (818) 396-2985

By: KELVIN MASON, JR.
5280 DUKE STREET, Apt. 104
ALEXANDRA, VA 22304
Phone: (951) 442-4368

By: BARNEY MASON
27846 GLADSTONE
MORENO VALLEY, CA 92555
Phone: (951) 489-9515

By: THALIA LASKEY
26637 SANTA ROSA DRIVE
MORENO VALLEY, CA 92555
Phone: (323) 574-4023

By: SHEDRICK MASON
27846 GLADSTONE
MORENO VALLEY, CA 92555
Phone: ( 951) 489-2745

By: BILLY MASON
3579 TERRACE AVENUE
FRESNO, CA 93722
Phone: (559) 906-3038

By: BARBARA CHARLES
26637 SANTA ROSA DRIVE
MORENO VALLEY, CA 92555
Phone: (323) 574-1789

By: ALLEN MITCHELL
23811 CABRILLO AVE.
TORRANCE, CA 90501
Phone: (310) 530-3186

By: KELVIN MASON
1136 W. FIAT STREET
TORRANCE, CA 90502
Phone: (562) 415-5596

By: JAMES MASON
123 CAPRI CIRCLE
HERCULES, CA 94547
Phone: (510) 799-3080

By: NATALEE MILLER
7046 A STREET
TACOMA, WA 98408
Phone: (253) 377-5316

By: GRANT PERRYMAN
260 WATERVIEW TERRACE
VALLEJO, CA 94591
Phone: (707) 319-5903

By: KEVIN MASON
For: DESCENDANTS of the MUSCOGEE CREEK FREEDMEN of OKLAHOMA
14771 GREEN LAWN AVENUE
MORENO VALLEY, CA 92555-5744
Phone: (951) 442-4368

# EXHIBIT 1

CREEK.

Roll No

FREEDMEN

| | |
|---|---|
| 193 | John M. Taylor |
| 194 | Harriett Taylor |
| 195 | Polly Taylor |
| 196 | Annie Taylor |
| 197 | Fross James Taylor |
| 198 | Mionnie Taylor |
| 199 | Harriett Taylor |
| 200 | Lucinda Taylor |

| FATHER | MOTHER | CHILD | Age and Roll No. |
|---|---|---|---|
| McGilbrays continued. | Mary Manuel | Bob Manuel | fg rui |
| | Ditto | Ellen Manuel | fs ruf |
| McGilbray, Jack (SEE ALSO"JACK") | Nancy McGilbray | Phillis Manuel | fu eosa |
| | Ditto | Viny Manuel | eg esua |
| | Ditto | Judy Manuel | se cous |
| | Ditto | Jim Manuel | er eouo |
| | Ditto | Bettie Scott | ra gen |
| | Ditto | Thos. Manuel | ri gfse |
| | Ditto Kernal | Amy Jackson | ge cefg |
| | Ditto McGilbray | Katie Manuel | fi ecin |
| | Ditto | Sam Manuel | rn esea |
| | Ditto | Robert J. Manuel | ge rag |
| | Ditto | Rachel Manuel | eu rrfa |
| | Ditto | Susan Bagen | r eeogc |
| | Ditto | Isaac Manuel | fo eoui |
| | Ditto | Linda Manuel | ef eour |
| | Rina McGilbray | Eliza Bungo | ue faro |
| | Ditto | York Jackson | ua esfr |
| | Ditto | Nancy McGilbray | se esgs |
| | Ditto | Jake Colbert | ua gffc |
| | Elsee McGilbray | Lizzie Manuel | ge riaa |
| McGilbray, James | Delilah Bruner<br>Judy | Ellen James | .o cog |
| | | Jackson Taylor | ru ggc |
| McGilbray, Joecrks See Appen... | Judy McGilbray | Maggie Durant | ee gouu |
| | Ditto | Betty Colbert | ri fur |
| | Ditto | John W. Taylor | ge fir |
| | Ditto | Robert Taylor | rf fgi |
| | Ditto | Geo. H. Taylor | gr fcof |
| McGilbray, Jim | Mollie Bruner | Peggy Grayson | ge fino |
| | Ditto McGilbray | Dave McGilbray | ge ffge |
| | Ditto | Daniel McGilbray | gi ngo |
| McGilbray, London | Aby McGilbray | Jack London | gr fsfr |
| McGilbray, Monday | Jane McGilbray | Ben McGilbray | er gner |
| McGilbray, Morris | Malinda McGilbray | Harriett Taylor | rf fig |
| McGilbray, Faro | Lucy McGilbray | Monday McGilbray | ue rrii |
| McGilbray, Quash | Maggie McGilbray | Boston Thompson | ge nce |
| | Maggie Cow Tom | Ned Thompson | gf rfrn |
| | Dollie Conway | Joe McGilbray | fn fsgn |



...tinued on next page.

| | | | |
|---|---|---|---|
| McCilbray, Hepsey | Joe McGilbray | William McGilbray | ru-usso |
| McIntosh, Winnie | Wm. McIntosh | Silvia McIntosh | us-usfi |
| Maharly, Sophia | Ben Mahardy | Alice Wilson | ra-uueg |
| Marshal, Ella | Budkin Marshall | Lillie Marshall | r-ugua |
| Marshall, Mollie | Budkin Marshall | Annie Marshall | fax-uomi |
| Mayfield, Aurora nee Walker | Alex Mayfeelf | Georgia Mayfield | N. B. F.-[illegible] |
| Moore, Laurene | Ed Bryant | Isreal Byrant | ga-grie |
| Moore, Lorena | Lewis Moore | Ezekiel Moore | ri-grif |
| Moore, Mary | Ezekiel Moore<br>John Moore | Gertrude Moore<br>Will Moore | g-grie<br>ei-gufo |
| Moore, Rhoda | Jerry Moore<br>Ditto<br>Ditto | Grant Moore<br>Stella Moore<br>Mamie Moore | ff-grno<br>fr-grn<br>i-grn |
| Morrison, Ella | Joseph Morrison | Charles Morrison | N. B. F.-rfi |
| Noble, Delia | George Noble | Stephen Noble | f-usui |
| Phillips, Eliza | George Pompey | Isaac Pompey | r uson |
| Phoebe | | Joe Grayson | se-ugsg |
| Ramsey, Lyddie | Sudon Bristor | Ben Bristor | fr-ugii |
| Rogers, Mary | Henry Jackson | Queen Victoria Jackson | e-useg |
| Scott, Catherine | Butcher Scott | Raymond Scott | N. P. F.-eo |
| Smith, Lavina | Ed Smith<br>Ditto | Ed Smith<br>Jesse Smith | r-usoa<br>r-useo |
| Smith, Susie | George Smith | Solomon Smith | eax-usnf |

# EXHIBIT 2

United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
Eastern Oklahoma Region
Eastern Oklahoma Regional Office
P.O. Box 8002
Muskogee, OK 74402-8002

TAKE PRIDE® IN AMERICA

IN REPLY REFER TO:
Tribal Government Services

Mr. Kevin Mason
14771 Green Lawn Avenue
Moreno Valley, California 92555

NOV 12 2009

Dear Mr. Mason:

This letter is in reference to the correspondence received at the Bureau of Indian Affairs (Bureau), Eastern Oklahoma Region, Okmulgee Agency, on December 3, 2008, appealing the decision of the Superintendent, Okmulgee Agency, not to issue a Certificate of Degree of Indian Blood (CDIB) to you and your family, Thalia Mason, Billy Mason, Barney Mason, James Mason, Barbara Mason, and Marcus Mason, based on non-verification of direct lineage to an enrollee with an Indian blood degree who is listed on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole.*

In preparation for the allotment of the communal lands of the Five Civilized Tribes, the Congress created the Commission to the Five Civilized Tribes in order for the Commission to make rolls of the citizens or members of each Tribe, and the Congress declared that once the Commission's rolls were approved by the Secretary of the Interior, said rolls would constitute "the final rolls of citizenship." Act of March 3, 1893, 27 Stat. 645. See generally Harjo v. Kleppe, 420 F. Supp. 1110 (D.D.C. 1976), aff'd sub nom. Harjo v. Andrus, 581 F.2d 949 (D.C. Cir. 1978.) In Section 2 of the Act of April 26, 1906, 34 Stat. 137, the Congress directed, *inter alia*, that 1) persons born after March 4, 1906, were not eligible for enrollment; 2) the rolls of the Five Civilized Tribes were to be closed on March 4, 1907; and 3) the Secretary of the Interior shall have no jurisdiction to approve the enrollment of any person after March 4, 1907. See Kirby v. Parker, 58 F. Supp. 309, 310-11 (E. D. Okla. 1944.)

It is well settled that "the rolls of citizenship and Freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive as to the quantum of Indian blood of any enrolled citizen or freedmen of said tribes." Cully v. Mitchell, 37 F.2d 493, 499 (10th Cir. 1930), cert. denied, 281 U.S. 740 (1930.) In one of the earliest cases challenging the Commission's work, the Court of Appeals held that:

> "...under these acts of Congress, the Commission to the Five Civilized Tribes is a special Tribunal, vested with judicial power to hear and determine the claims of all applicants to citizenship in the Five Civilized Tribes and its enrollment or refusal to

Jun 30 11 06:07p KEVIN MASON 323-247-8704 p.1

An alphabetical search was conducted on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes* for the names Annie Taylor Craig, John M. Taylor, Joseph McGilbray, and Judy McGilbray. The names Joseph McGilbray and Judy McGilbray did not appear on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes*. The names Annie Taylor Craig and John M. Taylor did appear on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes*. The results of the research are denoted below.

- Creek Freedmen Enrollment Card No. 51 for the enrollee, Annie Taylor, Creek Freedmen Roll No. 196, states she was 15 years of age in 1898, making her approximate birth year 1883. This record also states her father as John M. Taylor, Creek Freedmen Roll No. 193 and states her mother as Harriett Taylor, Creek Freedmen Roll No. 194. It further shows that the enrollee, Annie Taylor, did not have a degree of Indian blood listed on the Creek Freedmen Enrollment Card No. 51.

- Creek Freedmen Enrollment Card No. 51 for the enrollee, John M. Taylor, Creek Freedmen Roll No. 193, states he was 40 years of age in 1898, making his approximate birth year 1857. This record also states his father as Joseph McGilbray and states his mother as Judy McGilbray. It further shows that the enrollee, John M. Taylor, did not have a degree of Indian blood listed on the Creek Freedmen Enrollment Card No. 51.

The Proof of Death and Heirship record for the enrollee, John M. Taylor, Creek Freedmen Roll No. 193, states he died on October 5, 1921 at the age of 64 years. This record also states his first wife's name as Harriett Taylor, Creek Freedmen Roll No. 194, and states his second wife's name as Bettie R. Taylor. This record further states he had eight children. While this record states the Degree of Blood for his father, Joseph McGilbray, as "whole", the Degree of Blood for his mother, Judy McGilbray is not legible. Please be advised that Pursuant to the Bureau of Indian Affairs' Area Policy for Issuance of CDIB's dated July 27, 1989, a Legal Determination of Heirs is one form of acceptable proof of relationship. Final probate proceedings establishing relationship and bearing the signature of the officiating judge accompanied by one additional document to verify the date of birth are acceptable as to relationship but not as a **determination of degree of Indian blood (emphasis added.)** Further, neither Joseph McGilbray nor Judy McGilbray is listed in the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes*. The rolls of the Five Civilized Tribes were closed by an Act of Congress effective March 4, 1906, and persons born after March 4, 1905, were not eligible for enrollment. Also, persons that died prior to December 31, 1899, were not eligible for enrollment. No provisions for additions now exist under Federal law.

The citation pertaining to the Commission's authority to prepare rolls is provided in the Act of Congress approved June 10, 1896, (29 Stat. 339), that states in part:

> "And said Commission shall also make a roll of Freedmen entitled to citizenship in said Tribes and shall include their names in the lists of members to be filed with the Commissioner of Indian Affairs."

This office also offers the following from the Act of Congress approved April 26, 1906, (34 Stat. 137), that provides in part:

> "*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, that after the approval of this act no person shall be enrolled as a citizen or Freedman of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes of Indians in the Indian Territory, except as herein otherwise provided, unless application for enrollment was made prior to December first, nineteen hundred and five, and the records in charge of the Commissioner to the Five Civilized Tribes shall be conclusive evidence as to the fact of such application; and no motion to reopen or reconsider any citizenship case, in any of said Tribes, shall be entertained unless filed with the Commissioner to the Five Civilized Tribes within sixty days after the date of the order or decision sought to be reconsidered except as to decisions made prior to the passage of this act, in which cases such motion shall be made within sixty days after the passage of this act..."

Other documentation that you provided in this appeal is an abstract claim for Joe McGilbray, Freedman. A search was conducted on the *Claims of the Loyal Creek* for the name Joe McGilbray, No. 680. The result of the search states Loyal Creek (LC) No. 680, Joe McGilvray (McGilbray), was a Freedman and died in 1878 at the age of 46 years. It further states he was awarded $737.50 for his abstract claim. A search was also conducted on the *Loyal Creek Pay Book* for LC No. 680, Joe McGilbray, Freedman. The result of the search states the abstract claim for LC No. 680, Joe McGilbray, Freedman was paid to his heirs, however, Judy McGilbray was not listed as an heir on this record.

For your information the term "Loyal Creek" is applied to a group of Oklahoma Creeks who remained loyal to the United States Government during the Civil War. The Loyal Creek payment was an abstract of claims for property lost by the Loyal Creek Indians and Freedmen in consequence of the war from 1861 to 1866. After the close of the war, the United States recognized the losses sustained by the Loyal Creeks through a treaty dated June 14, 1866 (14 Stat. 785), made with the Creek Nation of Indians. This treaty provided for the establishment of a roll of the Loyal Creeks and for reimbursement to such persons with payment made from the proceeds of the sales of lands ceded by the Creek Nation.

Further, when slavery was abolished following the Civil War, treaties were negotiated with the so-called Five Civilized Tribes. The treaties conferred citizenship in the Tribe on those persons who had been held in slavery by the Tribes. Such citizens are referred to as Freedmen. When the Final Rolls of those Tribes were prepared in 1906, separate rolls were made of the Freedmen and Intermarried Whites and both groups are shown with no blood degree. CDIBs are not issued to individuals in these groups who cannot establish that they are descended from an individual with Indian blood.

A CDIB is issued in accordance with the authority provided by the Act of August 4, 1947 (61 Stat. 732) and is a certification by the Bureau that an individual has a specific quantum of Indian blood. CDIBs of the Five Civilized Tribes are based on a review of acceptable records

Charles, and Marcus Mason stating a direct lineage to your maternal grandmother, Cleopatra Craig Mason, your maternal great grandmother, Annie Taylor Craig, your maternal great great grandfather John M. Taylor, your maternal great great great grandfather Joe McGilbray, and your maternal great great great grandmother Judy McGilbray.

On October 31, 2008, the Superintendent rendered decisions to deny CDIBs to you, Thalia Mason Laskey, Billy Mason, Barney Mason, James Mason, Barbara Mason Charles, and Marcus Mason, as all of you were unable to verify direct lineage to an enrollee who is listed with an Indian blood degree on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes* approved March 4, 1907 (34 Stat. L. 325.) All of you received your respective decisions by Certified Mail – Return Receipt Requested.

On December 3, 2008, this office received your letter on behalf of yourself and your family appealing the decision of the Superintendent.

<u>Documentation</u>

- Mason – Birth Certificate, state of California, states that he was born on May 24, 1964. This record also states his father's name as Barney Adolph Mason and states his mother's name as Cora Dean Horace.

- Kevin Andre Mason – Certification of Vital Record, Affidavit to Amend a Record amends Line No. 1 of original birth certificate from Mason to show Kevin Andre Mason.

- Thallie Beatrice Mason – Birth Certificate, state of Oklahoma, states that she was born on December 2, 1931. This record also states her father's name as Cecil Mason and states her mother's name as Cleo Craig.

- Billy Cecil Mason – Delayed Birth Certificate, state of Oklahoma, states that he was born on January 12, 1935. This record also states his father's name as Cecil Mason and states his mother's name as Cleopatra Craig.

- Barney Adolph Mason – Standard Certificate of Live Birth, state of Oklahoma, states that he was born on October 3, 1938. This record also states his father's name as Cecil Mason and states his mother's name as Cleopatra Craig.

- James Edward Mason – Standard Certificate of Live Birth, state of Oklahoma, states that he was born on September 11, 1943. This record also states his father's name as Cecil Mason and states his mother's name as Cleopatra Craig.

- Barbara Jean Mason – Standard Certificate of Live Birth, state of Oklahoma, states that she was born on September 13, 1940. This record also states her father's name as Cecil Mason and states her mother's name as Cleopatra Craig.

- Marcus Alton Mason – Certificate of Live Birth, state of California, states that he was born on May 31, 1962. This record also states his father's name as Barney Mason and states his mother's name as Cora Dean Horace.

- Cleopatra Harriet Mason – Certificate of Death, state of California, states she was born on November 24, 1907, and states she died on June 18, 2001, at the age of 93 years. This record also states her father's name as Jewel Craig and states her mother's name as Annie Taylor.

- Anna Craig – Certificate of Death, state of Oklahoma, does not state her date of birth, and states she died on December 30, 1933, at the age of 44 years. This record also states her father's name as John M. Taylor and does not state her mother's name.

- John Melton Taylor – Certificate of Death, state of Oklahoma, does not state his date of birth, and states he died on October 5, 1921, at the age of 64 years. This record also states his father's name as Joseph Taylor and states his mother's name as Julia Grayson.

- Joe McGilbray – No documentation was submitted by you.

- Judy McGilbray – No documentation was submitted by you.

Discussion

As you and your family are trying to prove your Indian ancestry through your maternal grandmother, Cleopatra Craig Mason, your maternal great grandmother, Annie Taylor Craig, your maternal great great grandfather, John M. Taylor, your maternal great great great grandfather, Joe McGilbray, and your maternal great great great grandmother, Judy McGilbray, it was imperative that proof was provided that your ancestors were listed with an Indian blood degree on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes.*

Verifying documentation was not provided to show you and your family to be direct lineal descendant of an ancestor listed with an Indian blood degree on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes.* After reviewing the administrative records and the records maintained by this office, and based on the documents that were submitted by you and your family, the Regional Office does not find evidence that all of you are direct lineal descendants of an ancestor listed with an Indian blood degree on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes.* Further, the Regional Office offers the following information on the appeal.

The information that you submitted for your maternal grandmother, Cleopatra Harriet Mason, states that she was born on November 24, 1907. Therefore, she would not have been eligible for enrollment as, pursuant to Federal law, individuals born after March 4, 1906, were not eligible for enrollment in the Tribe.

and documents which verify the applicant's relationship to one or more of the enrollees and certifies only as to the degree of Indian blood calculated from the final approved rolls of the Five Civilized Tribes. It has been determined that you and your family are not eligible to be issued CDIBs as all of you were unable to verify direct lineage to an enrollee who is listed with an Indian blood degree on the *Index and Final Rolls of Citizens and Freedmen of the Creek and Seminole Tribes* approved by the Congress on June 21, 1906 (34 Stat. L. 325.)

Based on the records available to this office and the documentation that all of you provided in the appeal, the decisions of the Superintendent are affirmed. This decision is based upon the exercise of authority delegated to this office by the Secretary of the Interior and is final for the U.S. Department of the Interior.

Respectfully,

Regional Director

ACTING

# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Okmulgee Agency
P.O. Box 370
Okmulgee, OK 74447

IN REPLY REFER TO:

February 24, 1987

Grant Perryman
311 Mendocino St.
Vallejo, CA 94580

Dear Mr. Perryman:

We are returning your birth certificate and application for a Certificate of Degree of Indian blood due to the fact that your ancestors were enrolled on the Creek Freemen Rolls.

Creek Freedmen may be members of the Creek Nàtion but they are not necessarily Creek Indian by blood. When slavery was abolished following the Civil War, treaties were negotiated with the so-called Five Civilized Tribes, the Choctaw, Cherokee, Chickasaw, Creek and Seminole Nations. The treaties conferred citizenship in the tribes on the Negroes who had been held in slavery by the tribes. Such citizens are referred to as "Freedmen".

When the final rolls of the Five Civilized Tribes were prepared in 1906, separate rolls were made of the Freedmen and intermarried whites. Due to the intermarriage it is possible that some of the Freedmen may possess Indian blood. However, members of Five Civilized Tribes born after March 4, 1906, prove tribal affiliation and degree of Indian blood by showing relationship to the nearest enrolled lineal ancestor. Census records for your ancestry has been reviewed and all are enrolled as Creek Freedmen.

Decendents of the Freedmen are not entitled to participate in programs administered by the Bureau because these programs are provided for persons of Indian blood.

Should you have any questions relating to this matter, please contact this office.

Sincerley,

Jimmy L. Gibson,
Field Representative

# EXHIBIT 3

# *1866 Treaty With Creek Nation*

# *Articles 1 - 4 Pertaining to Freedmen*

# *and Loyalists to the Union*

**June 14, 1866, Ratified July 19, 1866, Proclaimed Aug. 11, 1866**

**PREAMBLE**

Whereas existing treaties between the United States and the Creek Nation have become insufficient to meet their mutual necessities; and whereas the Creeks made a treaty with the so-called Confederate States, on the tenth of July, one thousand eight hundred and sixty-one, whereby they ignored their allegiance to the United States, and unsettled the treaty relations existing between the Creeks and the United States, and did so render themselves liable to forfeit to the United States all benefits and advantages enjoyed by them in lands, annuities, protection, and immunities, including their lands and other property held by grant or gift from the United States; and whereas in view of said liabilities the United States require of the Creeks a portion of their land whereon to settle other Indians; and whereas a treaty of peace and amity was entered into between the United States and the Creeks and other tribes at Fort Smith, September *thirteenth* [tenth,] eighteen hundred and sixty-five, whereby the Creeks revoked, cancelled, and repudiated the aforesaid treaty made with the so-called Confederate States; and whereas the United States, through its commissioners, in said treaty of peace and amity, promised to enter into treaty with the Creeks to arrange and settle all questions relating to and growing out of said treaty with the so-called Confederate States: Now, therefore, the United States, by its commissioners, and the above-named delegates of the Creek Nation, the day and year above mentioned, mutually stipulate and agree, on behalf of the respective parties, as follows, to wit:

**ARTICLE 1.**

There shall be perpetual peace and friendship between the parties to this treaty, and the Creeks bind themselves to remain firm allies and friends of the United States, and never to take up arms against the United States, but always faithfully to aid in putting down its enemies. They also agree to remain at peace with all other Indian tribes; and, in return, the United States guarantees them quiet possession of their country, and protection against hostilities on the part of other tribes. In the event of hostilites, the United States agree that the tribe commencing and prosecuting the same shall, as far as may be practicable, make just reparation therefor. To insure this protection, the Creeks agree to a military occupation of their country, at any time, by the United States, and the United States agree to station and continue in said country from time to time, at its own expense, such force as may be necessary for that purpose. A general amnesty of all past offenses against the laws of the United States, committed by any member of the Creek Nation, is hereby declared. And the Creeks, anxious for the restoration of kind and friendly feelings among themselves, do hereby declare an amnesty for all past offenses against their government, and no Indian or Indians shall be proscribed, or any act of forfeiture or confiscation passed against those who have remained friendly to, or taken up arms against, the United States, but they shall enjoy equal privileges with other members of said tribe, and all laws heretofore passed inconsistent herewith are hereby declared inoperative.

**ARTICLE 2.**

The Creeks hereby covenant and agree that henceforth neither slavery nor involuntary servitude,

otherwise than in the punishment of crimes, whereof the parties shall have been duly convicted in accordance with laws applicable to all members of said tribe, shall ever exist in said nation; and inasmuch as there are among the Creeks many persons of African descent, who have no interest in the soil, it is stipulated that hereafter these persons lawfully residing in said Creek country under their laws and usages, or who have been thus residing in said country, and may return within one year from the ratification of this treaty, and their descendants and such others of the same race as may be permitted by the laws of the said nation to settle within the limits of the jurisdiction of the Creek Nation as citizens [thereof,] shall have and enjoy all the rights and privileges of native citizens, including an equal interest in the soil and national funds, and the laws of the said nation shall be equally binding upon and give equal protection to all such persons, and all others, of whatsoever race or color, who may be adopted as citizens or members of said tribe.

**ARTICLE 3.**

In compliance with the desire of the United States to locate other Indians and freedmen thereon, the Creeks hereby cede and convey to the United States, to be sold to and used as homes for such other civilized Indians as the United States may choose to settle thereon, the west half of their entire domain, to be divided by a line running north and south; the eastern half of said Creek lands, being retained by them, shall, except as herein otherwise stipulated, be forever set apart as a home for said Creek Nation; and in consideration of said cession of the west half of their lands, estimated to contain three millions two hundred and fifty thousand five hundred and sixty acres, the United States agree to pay the sum of thirty (30) cents per acre, amounting to nine hundred and seventy-five thousand one hundred and sixty-eight dollars, in the manner hereinafter provided, to wit: two hundred thousand dollars shall be paid per capita in money, unless otherwise directed by the President of the United States, upon the ratification of this treaty, to enable the Creeks to occupy, restore, and improve their farms, and to make their nation independent and self-sustaining, and to pay the damages sustained by the mission schools on the North Fork and the Arkansas Rivers, not to exceed two thousand dollars, and to pay the delegates such per diem as the agent and Creek council may agree upon, as a just and fair compensation, all of which shall be distributed for that purpose by the agent, with the advice of the Creek council, under the direction of the Secretary of the Interior. One hundred thousand dollars shall be paid in money and divided to soldiers that enlisted in the Federal Army and the loyal refugee Indians and freedmen who were driven from their homes by the rebel forces, to reimburse them in proportion to their respective losses; four hundred thousand dollars be paid in money and divided per capita to said Creek Nation, unless otherwise directed by the President of the United States, under the direction of the Secretary of the Interior, as the same may accrue from the sale of land to other Indians. The United States agree to pay to said Indians, in such manner and for such purposes as the Secretary of the Interior may direct, interest at the rate of five per cent. per annum from the date of the ratification of this treaty, on the amount hereinbefore agreed upon for said ceded lands, after deducting the said two hundred thousand dollars; the residue, two hundred and seventy-five thousand one hundred and sixty-eight dollars, shall remain in the Treasury of the United States, and the interest thereon, at the rate of five per centum per annum, be annually paid to said Creeks as above stipulated.

**ARTICLE 4.**

Immediately after the ratification of this treaty the United States agree to ascertain the amount due the respective soldiers who enlisted in the Federal Army, loyal refugee Indians and freedmen, in proportion to their several losses, and to pay the amount awarded each, in the following manner, to wit: A census of the Creeks shall be taken by the agent of the United States for said nation, under the direction of the Secretary of the Interior, and a roll of the names of all soldiers that enlisted in the Federal Army, loyal refugee Indians, and freedmen, be made by him. The superintendent of Indian affairs for the Southern superintendency and the agent of the United States for the Creek Nation shall proceed to investigate and

determine from said roll the amounts due the respective refugee Indians, and shall transmit to the Commissioner of Indian affairs for his approval, and that of the Secretary of the Interior, their awards, together with the reasons therefor. In case the awards so made shall be duly approved, said awards shall be paid from the proceeds of the sale of said lands within one year from the ratification of this treaty, or so soon as said amount of one hundred thousand ($100,000) dollars can be raised from the sale of said land to other Indians.

**************

Note: Signers and Witnesses:

In the presence of—

D. N. Cooley, Commissioner Indian Affairs. [SEAL.]
Elijah Sells, Superintendent Indian Affairs. [SEAL.]
Ok-ta-has Harjo, his x mark. [SEAL.]
Cow Mikko, his x mark. [SEAL.]
Cotch-cho-chee, his x mark. [SEAL.]
D. N. McIntosh. [SEAL.]
James M. C. Smith. [SEAL.]

J. W. Dunn, United States Indian agent.
J. Harlan, United States Indian agent.
Charles E. Mix.
J. M. Tebbetts.
Geo. A. Reynolds, United States Indian agent.
John B. Sanborn.
John F. Brown, Seminole delegate.
John Chupco, his x mark.
Fos-har-jo, his x mark.
Cho-cote-huga, his x mark.
R. Fields, Cherokee delegate.
Douglas H. Cooper.
Wm. Penn Adair.
Harry Island, his x mark, United States interpreter, Creek Nation. **(Freedman)**
Suludin Watie.

# EXHIBIT 4

# REPORTS OF COMMITTEES

2363

OF THE

# SENATE OF THE UNITED STATES

FOR THE

## FIRST SESSION OF THE FORTY-NINTH CONGRESS

## 1885-'86.

IX.

---

IN ELEVEN VOLUMES.

Volume 1.—Nos. 1 to 90, inclusive, except No. 46.
Volume 2.—No. 46, part 1.
Volume 3.—No. 46, part 2.
Volume 4.—Nos. 91 to 392, inclusive.
Volume 5.—Nos. 393 to 784, inclusive.
Volume 6.—Nos. 785 to 1088, inclusive.
Volume 7.—Nos. 1089 to 1315, inclusive, except No. 1278.
Volume 8.—No. 1278, parts 1 and 3.
Volume 9.—No. 1278, part 2.
Volume 10.—Nos. 1316 to 1453, inclusive.
Volume 11.—Nos. 1454 to 1615, inclusive.

---

WASHINGTON:
GOVERNMENT PRINTING OFFICE.
1886.

*Be it further enacted*, That the bonds provided for in this act shall bear the uniform date of the first day of November, 1874, provided that all national warrants which this act provides for the funding of shall be presented for cancelation by the first day of May, 1875, in default thereof the bond or bonds for such warrants shall only draw interest at the rate of five *per centum* per annum for the half year in which they are presented, and thereafter the uniform annual interest provided for in this act.

*Be it further enacted*, That the sum of two thousand five hundred dollars be, and the same is hereby, appropriated out of the national funds of each year, or so much thereof as may be necessary, to pay the annual interest on the bonds as herein provided for.

*Be it further enacted*, That any and all surplus moneys remaining in the treasury out of the general funds, excepting school and blacksmiths' funds, shall be, and the same is hereby, set apart as a sinking fund, which shall be used only in the payment of bonds to be issued under this act, and the national council of each year shall vest all and any such surplus moneys in the sinking fund, and whenever such sinking fund shall amount to the sum of five thousand dollars, the treasurer shall use the same in retiring and canceling national bonds on terms most favorable to the nation.

*Be it further enacted*, That the treasurer shall keep a record of all warrants canceled and register of all bonds issued therefor, and also keep a register of the interest due on such bonds and paid thereon; and he is hereby authorized to procure printed bonds, and all books and materials necessary to carry out this act, and the treasurer is hereby required, in connection with his annual report, to submit a detailed statement for each year of warrants canceled, bonds issued, interest paid, and interest due and unpaid, and bonds canceled and retired.

*Be it further enacted*, That the national funds, accruing to the Muskogee Nation from and after this date, excepting the school and blacksmiths' funds, and the interest fund herein provided for, shall be applied and used for the current expenses of the national government, as provided for by acts of appropriation of the national council: *And provided further*, That any and all surplus moneys shall be appropriated for the sinking fund.

### ARTICLE III.

#### ORDER OF PAYMENT OF NATIONAL WARRANTS.

SEC. 1. The national treasurer shall cash all warrants issued by the Muskogee Nation, and held against the same, up to October 23d, 1879, before making any payment upon any which has been or shall be issued after that date.

SEC. 2. After all warrants issued previous to the above-mentioned date shall have been canceled the national treasurer shall make payment on those issued after that date according to the date of issuance: *Provided*, That after the date of a public payment has been published, and the parties holding warrants having priority of date shall fail to present them, it shall then be the duty of the national treasurer to cash those having the next priority: *And provided*, That this article shall not be construed so as to affect in any manner educational or other preferred warrants.

## CHAPTER VII.

(Citizenship and non-citizens.)

### ARTICLE I.

#### DOUBTFUL CITIZENSHIP.

SEC. 1. All persons having resided out of the limits of the Muskogee Nation, and whose rights as citizens of the same may seem to be questionable in consequence of intermarriage with non-citizens, shall be bona fide citizens of this nation, provided they can prove to the satisfaction of the proper authorities that they are of Muskogee descent, and not further removed than the fourth degree.

SEC. 2. All persons who have been at any time adopted by the recognized authorities of the Muskogee Nation, and all persons of African descent who were made citizens by the treaty of June, 1866, between the Creek Nation and the United States, shall hereafter be recognized as citizens of the Muskogee Nation.

SEC. 3. Any person claiming citizenship under these provisions shall, in order to establish his or her rights, prove the same by a responsible and disinterested native witness before the district court.

### ARTICLE II.

#### PERSONS TO WHOM CITIZENSHIP HAS BEEN GRANTED.

SEC. 1. The following persons are hereby declared full citizens of the Muskogee or Creek Nation, and they shall be subject to the Creek laws, and shall have all the rights, privileges, and immunities of the original members of the tribe:

Robert Childers, Daniel Childers, James Childers, Napoleon Childers, Josephine

Childers, Louis Childers, Joe McGilbra, Old Sutum, Morris Sancho, Mary Ann Bittle, Dick Grayson, Nina Grayson, Diana Grayson, Richard Grayson, Delsey Grayson, Hannah Grayson, Moses Grayson, Savier Grayson, Mary Grayson, Maryanna Grayson, Josh Grayson, Michael Grayson, Dolly Grayson, Sandy Grayson, Fannie Grayson, James Bay Grayson, Samuel Grayson, Jack Grayson, Aaron Grayson, Judia Grayson, Luveney Grayson, Benton Grayson, Daniel Grayson, Valintia Grayson, Rachel Grayson, Menervia Grayson, Alice Grayson, Lizzie Grayson, James Hawkins, Robert Drew, Marron Drew, Annie Drew, James Drew, Samuel Drew, Alex. Drew, Sandy Strawng, Peggy McIntosh, Thomas Hawkins, Jacob Barrett, Racey Drew, Bill Drew, Johnson Drew, Celia Drew, Nellie Drew, Dick Drew, David Drew, Peter Drew, Abb Nivins, Tilley Grayson, Mitchell Grayson, Morris Grayson, Joe Grayson, Leah Grayson, Cella Grayson, Abram Grayson, Amanda Grayson, Sharper Grayson, Pennany Grayson, Caroline McIntosh, Fannie McIntosh Calter McIntosh, Warrior McIntosh, Old Man Dean, Nancy Dean, Elias Dean, Pina Perryman, Edward Johnson, Fannie McGilbra, Mariah McGilbra, Harriet McGilbra, Jim McGilbra, Sarah McGilbra, Julia McGilbra, Luke McGilbra, Patsey McGilbra, Dolly McGilbra, Nero McGilbra, Robb McGilbra, Lizzie McGilbra, Eliza McGilbra, Billy McGilbra, Ben McGilbra, Jack McGilbra, Nancy McGilbra, Lizzie McGilbra, Amy McGilbra, Thomas McGilbra, James McGilbra, Kezziah McGilbra, Betty McGilbra, Jimmy McGilbra, Suski McGilbra, Juda McGilbra, Monday McGilbra, Jake McGilbra, Tinne McGilbra, Stephen McGilbra, Joe McGilbra, Israel McGilbra, Cintha McGilbra, Jimmie McGilbra, Mollie McGilbra, Cookie McGilbra, Vircie McGilbra, Quash McGilbra, Abe McGilbra, Lany McGilbra, Rina McGilbra, Rosa McGilbra, Lizzie McGilbra, Jimmie McGilbra, Philisa McGilbra, Maria McGilbra, Rentie McGilbra, Susie McGilbra, Henderson McGilbra, Marye McGilbra, George McGilbra, sr., George McGilbra, jr., William McGilbra, Ereen McGilbra, York McGilbra, John McGilbra, Darkis McGilbra and four children, Anna McGilbra and one child.

## ARTICLE III.

### INTERMARRIED NON-CITIZENS.

SEC. 1. All non-citizens, not previously adopted, and being married to citizens of this nation, or having children entitled to citizenship, shall have a right to live in this nation and enjoy all the privileges enjoyed by other citizens except participation in the annuities and final participation in the lands, and in case of removal from the limits of our nation shall not have the right to sell their improvements; provided that such person shall satisfy the principal chief as to their good character and honest intentions, and provided that the principal chief shall grant to such person permit to reside in the nation during good behavior.

SEC. 2. The principal chief is hereby authorized to grant the permits herein provided for.

## ARTICLE IV.

### RIGHTS AND DISABILITIES OF NON-CITIZENS.

SEC. 1. No non-citizen shall have a right to reside in or to own any kind of property within the Muskogee Nation except by permit, and any non-citizen without a permit who shall make any improvements within the Muskogee Nation shall forfeit the same to the nation.

SEC. 2. This article shall not be construed so as to interfere with persons who are intermarried with citizens of the Muskogee Nation, or so as to interfere with any rights guaranteed by treaty.

## ARTICLE V.

### TRADERS.

SEC. 1 All persons who carry on any business transaction within the limits of this nation, under license from the United States Government, shall be required to pay the sum of one hundred dollars per annum into the national treasury of this nation, and it shall be the duty of the light horse captains to collect the same.

SEC. 2. No non-citizen licensed trader, who has not intermarried with a citizen of this nation, shall be allowed to inclose more than two acres of our public domain, nor be allowed to cut and put up hay from our common pasturage, and any non-citizen, not intermarried, licensed trader, found cutting and putting up hay from the common pasturage shall be fined ten dollars per acre for each acre so cut and put up.

SEC. 3. No non-citizen, not intermarried, licensed trader, shall be allowed to keep stock ranches nor permanent herds of cattle within the limits of this nation; and any licensed trader of this class who shall disobey this provision shall be reported to the United States agent, by the district attorney in whose district the trader is doing business, with the request that said person's license be revoked, and that they be removed from the limits of the Muskogee Nation.

# African-Native American Genealogy Forum

## 1867 enrollment

**By:** Wotko70 < >
**Date:** Thursday, 27 March 2008, 1:51 pm

Granting of Citizenship Chapter XX:
Persons to Whom Citizenshiphas been Granted:
Section 294> The following persons are hereby declared full citizenship of the muscogee or Creek Nation, and they shall be subject to the Creek laws, and shall have the rights,priviledges and immunities of the origihal members of the tribe:
Robert Childers,Napoleon Childers,Joe McGilbra,Julie McGilbra,Dollie McGilbra,Lizzie McGilbra,Ben McGilbra,James McGilbra,Jimmy McGilbra,Monday McGilbra,Steven McGilbra,Cinthia McGilbra,,Cookie McGillbra,Abe McGilbra,RosaMcGilbra,PhyllisMcGilbra,Susie McGilbra,GeorgemMcGilbra,Sr,Green McGilbra,Darkis McGilbra and four Children,Old Sutum (MCGILBRA }is enrolledJames Hawkins Jacob Barret, Nancy Dean,Edward Johnson,Calter McIntosh,Robert Drew,James Drew,RAcey Drew,Cella Drew,Daniel Childers,Josephine Childers,Fannie McGilbra,Jim McGilbra,Luke McGilbra,Neto McGilbra,Eliza McGilbra,Jack McGilbra,Amy McCilbra(my anunt) Keziah McGilbra,Suzki McGilbra,Jake McGilbra,Joe McGilbra,Jimmie McGilbra Vircle McGilbra,KLany McGilbra,Lizzie McGilbray(my Gggrandmother) Maria McGilbra,Henderson McGilbra,York McGilbra,Morris Sancho,Lizzie Hawkins,Sandy Straw,Elias Dean,Caroline Mc Intosh,Warrior McIntosh,Mason Drew,Nelllie Drew,James Childers,Louis Childers,Mariah MCgilbra,Sarah McGilbray,Robert McGilbray, Billy McGilbra,Juda McGilbray,Tinne McGilbra,Isreal cGilbra,Mollie McGilbra,Quash McGilbra,Rina McGilbra,Jimmie McGilbra,Rentie McGilbra,Marye McGilbra,
william McGilbra,John McGilbra,Anna McGilbray and one child mary An Bittle,Abb Nevins Old Man Dean, Pena Perryman,Fannie Mc Intosh,Annie Drew Johnson Drew,Dick Drew, Davis Drew,Nina Grayson Delsey Grayson,Daisey Grayson,SAvier Grayson Josh Grayson,Josh Grayson,SAndy Grayson,Samuel Grayson,Luveney Grayson,Valinta Grayson,Alice GRayson,Judia Grayson,Leah Grayson,Amanda Grayson,Mitchell Grayson,Peter Drew Diana Grayson Hannah

# EXHIBIT 5

# CLAIM NO. 680.

## Under Article 4, Treaty of 14th June, 1866, with CREEK INDIANS.

THE CLAIMANT HEREIN Joe McGilvray (a Blacksmith) Freedman. Soldier in 1st Indian Regiment

aged about 46. years, being personally present before the undersigned, and duly sworn and examined, ~~through~~ in English ~~sworn Interpreter,~~ deposes, in substance; that during the war of the rebellion he was loyal to the United States; that he necessarily abandoned his home in August 1863 and Enlisted, and served as a Soldier in said Regiment during the War) that he owned and possessed, and necessarily abandoned and lost, the property hereinafter specified, and that no part thereof has ever been recovered by him, to say:

| | | $ |
|---|---|---|
| 15 Horses | Valued | 750. |
| 41 Cattle | " | 615 |
| 70 Hogs | " | 350 |
| 150 Bushels Corn | " | 150. |
| 1 Set Blk Smith's Tools | " | 60 |
| 25 Bushels Potatoes | " | 25. |
| House & furniture &c | " | 50. |

Making a total value of ............ $2000.0

# AWARD.

In consideration of the foregoing evidence

the undersigned believe it just and equitable, and do therefore award the claimant Joe McGilbray as follows:

| | | | |
|---|---|---|---|
| 15 Horses | @15 | $ | 225.00 |
| 41 Cattle | 5 | | 205.00 |
| 70 Hogs | 2 | | 140.00 |
| 150 Bushels Corn | 50 | | 75.00 |
| 25 Do Potatoes | 50 | | 12.50 |
| 1 Set Blacksmith's Tools | @ | | 30.00 |
| House, Furniture &c | @ | | 50.00 |

Making a total award of . . . . . . . . . . . . . . . . . . . . . $ 737.50

W. B. Hazen

Brevet Major General U. S. Army,
Superintendent of Indian Affairs,
*Southern Superintendency.*

F. A. Field

Captain U. S. Army,
*Creek Agent.*

Done at Barnetts Creek Nation,

this 8. day of Dec. A. D. 1869

[signature]

1st Lieut. 6th U. S. Infantry,
Assistant Superintendent of Indian Affairs,
*Southern Superintendency.*

---

Berry Bruner, a creek

and

and William Bruner

a Freedman

Witnesses, being personally present during the above examination, and by the undersigned, duly sworn and examined, ~~through~~ in English ~~sworn~~ ~~Interpreter~~, depose, in substance: that they have no pecuniary interest in the claim of Joe McGilvray ; that they have heard the statement made by claimant and have full knowledge of the matter therein set forth, and that the same is true.

Done at Barnetts Creek Nation, this

8. day of Dec. 1869

[signature]

1st Lieutenant 6th U. S. Infantry,
Assistant Superintendent of Indian Affairs,
*Southern Superintendency.*

# EXHIBIT 6

# EXHIBIT 6

*Treaty between the United States of America and the Creek Nation of Indians; Concluded June 14, 1866; Ratification advised, with Amendments, July 19, 1866; Amendments accepted July 28, 1866; Proclaimed August 11, 1866.*

## ANDREW JOHNSON,

PRESIDENT OF THE UNITED STATES OF AMERICA, June, 14, 1866.

TO ALL AND SINGULAR TO WHOM THESE PRESENTS SHALL COME, GREETING:

WHEREAS a treaty was made and concluded at the city of Washington, in the District of Columbia, on the fourteenth day of June, in the year of our Lord one thousand eight hundred and sixty-six, by and between Dennis N. Cooley and Elijah Sells, Commissioners, on the part of the United States, and Ok-ta-has Harjo, Cow-mikko, and Cotch-cho-chee, delegates at large of the Creek Nation of Indians, and D. N. McIntosh and James M. C. Smith, special delegates of the Southern Creeks, on the part of said Creek Nation of Indians and Southern Creeks, all of which delegates at large and special delegates were duly authorized thereto by said Creek Nation and Southern Creeks, which treaty is in the words and figures following, to wit:— Preamble.

TREATY OF CESSION AND INDEMNITY concluded at the city of Washington on the fourteenth day of June, in the year of our Lord one thousand eight hundred and sixty-six, by and between the United States, represented by Dennis N. Cooley, Commissioner of Indian affairs, Elijah Sells, superintendent of Indian affairs for the Southern superintendency, and Col. Ely S. Parker, special Commissioner, and the Creek Nation of Indians, represented by Ok-tars-sars-harjo, or Sands; Cow-e-to-me-co and Che-chu-chee, delegates at large, and D. N. McIntosh and James Smith, special delegates of the Southern Creeks. Contracting parties.

### PREAMBLE.

WHEREAS existing treaties between the United States and the Creek Nation have become insufficient to meet their mutual necessities; and whereas the Creeks made a treaty with the so-called confederate states, on the tenth of July, one thousand eight hundred and sixty-one, whereby they ignored their allegiance to the United States, and unsettled the treaty relations existing between the Creeks and the United States, and did so render themselves liable to forfeit to the United States all benefits and advantages enjoyed by them in lands, annuities, protection, and immunities, including their lands and other property held by grant or gift from the United States; and whereas in view of said liabilities the United States require of the Creeks a portion of their land whereon to settle other Indians; and whereas a treaty of peace and amity was entered into between the United States and the Creeks and other tribes at Fort Smith, September tenth, eighteen hundred and sixty-five, whereby the Creeks revoked, cancelled, and repudiated the aforesaid treaty made with the so-called confederate states; and whereas the United States, through its commissioners, in said treaty of peace and amity, promised to enter into treaty with the Creeks to arrange and settle all questions relating to and growing out of said treaty with the so-called confederate states: Now, therefore, the United States, by its commissioners, and the above-named delegates



HeinOnline -- 14 Stat. 785 1863-1867

of the Creek Nation, the day and year above mentioned, mutually stipulate and agree, on behalf of the respective parties, as follows, to wit:—

Peace and friendship.

Article I. There shall be perpetual peace and friendship between the parties to this treaty, and the Creeks bind themselves to remain firm allies and friends of the United States, and never to take up arms against the United States, but always faithfully to aid in putting down its enemies. They also agree to remain at peace with all other Indian tribes; and, in return, the United States guarantees them quiet possession of their country, and protection against hostilities on the part of other tribes. In the event of hostilities, the United States agree that the tribe commencing and prosecuting the same, shall, as far as may be practicable, make just reparation therefor. To insure this protection, the Creeks agree to a military occupation of their country, at any time, by the United States, and the United States agree to station and continue in said country from time to time, at its own expense, such force as may be necessary for that purpose. A general amnesty of all past offences against the laws of the United States, committed by any member of the Creek Nation, is hereby declared. And the Creeks, anxious for the restoration of kind and friendly feelings among themselves, do hereby declare an amnesty for all past offences against their government, and no Indian or Indians shall be proscribed, or any act of forfeiture or confiscation passed against those who have remained friendly to, or taken up arms against, the United States, but they shall enjoy equal privileges with other members of said tribe, and all laws heretofore passed inconsistent herewith are hereby declared inoperative.

Military occupation and protection by the United States.

Amnesty.

Slavery not to exist among the Creeks.

Article II. The Creeks hereby covenant and agree that henceforth neither slavery nor involuntary servitude, otherwise than in the punishment of crimes, whereof the parties shall have been duly convicted in accordance with laws applicable to all members of said tribe, shall ever exist in said nation; and inasmuch as there are among the Creeks many persons of African descent, who have no interest in the soil, it is stipulated that hereafter these persons lawfully residing in said Creek country under their laws and usages, or who have been thus residing in said country, and may return within one year from the ratification of this treaty, and their descendants and such others of the same race as may be permitted by the laws of the said nation to settle within the limits of the jurisdiction of the Creek Nation as citizens [thereof,] shall have and enjoy all the rights and privileges of native citizens, including an equal interest in the soil and national funds, and the laws of the said nation shall be equally binding upon and give equal protection to all such persons, and all others, of whatsoever race or color, who may be adopted as citizens or members of said tribe.

Rights of those of African descent.

Cession of lands to the United States.

Article III. In compliance with the desire of the United States to locate other Indians and freedmen thereon, the Creeks hereby cede and convey to the United States, to be sold to and used as homes for such other civilized Indians as the United States may choose to settle thereon, the west half of their entire domain, to be divided by a line running north and south; the eastern half of said Creek lands, being retained by them shall, except as herein otherwise stipulated, be forever set apart as a home for said Creek Nation; and in consideration of said cession of the west half of their lands, estimated to contain three millions two hundred and fifty thousand five hundred and sixty acres, the United States agree to pay the sum of thirty (30) cents per acre, amounting to nine hundred and seventy-five thousand one hundred and sixty-eight dollars, in the manner hereinafter provided, to wit: two hundred thousand dollars shall be paid per capita in money, unless otherwise directed by the President of the United States, upon the ratification of this treaty, to enable the Creeks to occupy, restore, and improve their farms, and to make their

Payments therefor, and mode of payment.

Amendment Post, p. 791

HeinOnline -- 14 Stat. 786 1863-1867

nation independent and self-sustaining, and to pay the damages sustained by the mission schools on the North Fork and the Arkansas rivers, not to exceed two thousand dollars, and to pay the delegates such per diem as the agent and Creek council may agree upon, as a just and fair compensation, all of which shall be distributed for that purpose by the agent, with the advice of the Creek council, under the direction of the Secretary of the Interior. One hundred thousand dollars shall be paid to soldiers that enlisted in the Federal army and the loyal refugee Indians and freedmen who were driven from their homes by the Rebel forces, to reimburse them in proportion to their respective losses; four hundred thousand dollars shall be paid per capita in money to said Creek nation, unless otherwise directed by the President of the United States, under the direction of the Secretary of the Interior, as the same may accrue from the sale of land to other Indians. The United States agree to pay to said Indians, in such manner and for such purposes as the Secretary of the Interior may direct, interest at the rate of five per cent per annum from the date of the ratification of this treaty, on the amount hereinbefore agreed upon for said ceded lands, after deducting the said two hundred thousand dollars; the residue, two hundred and seventy-five thousand one hundred and sixty-eight dollars, shall remain in the treasury of the United States, and the interest thereon, at the rate of five per centum per annum, be annually paid to said Creeks as above stipulated.

Amendment. *Post*, p. 791.

ARTICLE IV. Immediately after the ratification of this treaty the United States agree to ascertain the amount due the respective soldiers who enlisted in the Federal army, loyal refugee Indians and freedmen, in proportion to their several losses, and to pay the amount awarded each, in the following manner, to wit: A census of the Creeks shall be taken by the agent of the United States for said nation, under the direction of the Secretary of the Interior, and a roll of the names of all soldiers that enlisted in the Federal army, loyal refugee Indians, and freedmen, be made by him. The superintendent of Indian affairs for the Southern superintendency and the agent of the United States for the Creek nation shall proceed to investigate and determine from said roll the amounts due the respective refugee Indians, and shall transmit to the commissioner of Indian affairs for his approval, and that of the Secretary of the Interior, their awards, together with the reasons therefor. In case the awards so made shall be duly approved, said awards shall be paid from the proceeds of the sale of said lands within one year from the ratification of this treaty, or so soon as said amount of one hundred thousand ($100,000) dollars can be raised from the sale of said land to other Indians.

Losses of loyal refugee Indians and freedmen, soldiers enlisted in federal army.

Census, &c.

ARTICLE V. The Creek nation hereby grant a right of way through their lands, to the Choctaw and Chickasaw country, to any company which shall be duly authorized by Congress, and shall, with the express consent and approbation of the Secretary of the Interior, undertake to construct a railroad from any point north of to any point in or south of the Creek country, and likewise from any point on their eastern to their western or southern boundary, but said railroad company, together with all its agents and employés, shall be subject to the laws of the United States relating to intercourse with Indian tribes, and also to such rules and regulations as may be prescribed by the Secretary of the Interior for that purpose, and the Creeks agree to sell to the United States, or any company duly authorized as aforesaid, such lands not legally owned or occupied by a member or members of the Creek nation, lying along the line of said contemplated railroad, not exceeding on each side thereof a belt or strip of land three miles in width, at such price per acre as may be eventually agreed upon between said Creek nation and the party or parties building said road, subject to the approval of the President of the United States: *Provided, however*, That said land thus sold shall not be

Right of way granted for a railroad.

Conditions.

Lands will be sold.

Proviso.

HeinOnline -- 14 Stat. 787 1863-1867

reconveyed, leased, or rented to, or be occupied by any one not a citizen of the Creek nation, according to its laws and recognized usages: *Provided, also*, That officers, servants, and employés of said railroad necessary to its construction and management, shall not be excluded from such necessary occupancy, they being subject to the provisions of the Indian intercourse law and such rules and regulations as may be established by the Secretary of the Interior, nor shall any conveyance of any of said lands be made to the party building and managing said road until its completion as a first-class railroad, and its acceptance as such by the Secretary of the Interior.

Creek orphan fund, and orphan children.

ARTICLE VI. Inasmuch as the bonds, or a portion thereof, in which the Creek orphan fund has been heretofore invested, from certain causes have largely depreciated in value, and are for the purposes for which said fund was set aside unproductive, it is hereby further stipulated that such of the bonds now held by the Secretary of the Interior, in trust for the orphans of the Creek nation, as may be necessary to establish a manual-labor school for the improvement and education of the orphan children of said nation shall be disposed of, and the avails thereof used for that purpose, under the direction of the Secretary of the Interior. The residue of said fund shall be retained in the treasury of the United States, upon which interest at the rate of five per cent shall annually be paid for the maintenance and support of said school.

Amendment. *Post*, p. 791.

Seminoles may convey to the United States.

ARTICLE VII. The Creeks hereby agree that the Seminole tribe of Indians may sell and convey to the United States all or any portion of the Seminole lands, upon such terms as may be mutually agreed upon by and between the Seminoles and the United States.

Line dividing the Creek country to be surveyed.

ARTICLE VIII. It is agreed that the Secretary of the Interior forthwith cause the line dividing the Creek country, as provided for by the terms of the sale of Creek lands to the United States in article third of this treaty, to be accurately surveyed under the direction of the commissioner of Indian affairs, the expenses of which survey shall be paid by the United States.

Agency buildings.

ARTICLE IX. Inasmuch as the agency buildings of the Creek tribe have been destroyed during the late war, it is further agreed that the United States shall at their own expense, not exceeding ten thousand dollars, cause to be erected suitable agency buildings, the sites whereof shall be selected by the agent of said tribe, in the reduced Creek reservation, under the direction of the superintendent of Indian affairs.

In consideration whereof, the Creeks hereby cede and relinquish to the United States one section of their lands, to be designated and selected by their agent, under the direction of the superintendent of Indian affairs, upon which said agency buildings shall be erected, which section of land shall revert to the Creek nation when said agency buildings are no longer used by the United States, upon said nation paying a fair and reasonable value for said buildings at the time vacated.

Creeks agree to certain legislation.

ARTICLE X. The Creeks agree to such legislation as Congress and the President of the United States may deem necessary for the better administration of justice and the protection of the rights of person and property within the Indian territory: *Provided, however*, [That] said legislation shall not in any manner interfere with or annul their present tribal organization, rights, laws, privileges, and customs. The Creeks also agree that a general council, consisting of delegates elected by each nation or tribe lawfully resident within the Indian territory, may be annually convened in said territory, which council shall be organized in such manner and possess such powers as are hereinafter described.

General council.

Census.

First. After the ratification of this treaty, and as soon as may be deemed practicable by the Secretary of the Interior, and prior to the first session of said council, a census, or enumeration of each tribe lawfully resident in said territory, shall be taken under the direction of the

HeinOnline -- 14 Stat. 788 1863-1867

superintendent of Indian affairs, who for that purpose is hereby authorized to designate and appoint competent persons, whose compensation shall be fixed by the Secretary of the Interior and paid by the United States.

Second. The first general council shall consist of one member from each tribe, and an additional member for each one thousand Indians, or each fraction of a thousand greater than five hundred, being members of any tribe lawfully resident in said territory, and shall be selected by said tribes respectively, who may assent to the establishment of said general council, and if none should be thus formally selected by any nation or tribe, the said nation or tribe shall be represented in said general council by the chief or chiefs and headmen of said tribe, to be taken in the order of their rank as recognized in tribal usage, in the same number and proportion as above indicated. After the said census shall have been taken and completed, the superintendent of Indian affairs shall publish and declare to each tribe the number of members of said council to which they shall be entitled under the provisions of this article, and the persons entitled to so represent said tribes shall meet at such time and place as he shall appoint, but thereafter the time and place of the sessions of said council shall be determined by its action: *Provided*, That no session in any one year shall exceed the term of thirty days, and provided that special sessions of said council may be called whenever, in the judgment of the Secretary of the Interior, the interest of said tribe shall require.

First general council, how composed.

Time and place of meeting.

Sessions not to exceed 30 days.

Special sessions.

Third. Said general council shall have power to legislate upon all rightful subjects and matters pertaining to the intercourse and relations of the Indian tribes and nations resident in said territory, the arrest and extradition of criminals and offenders escaping from one tribe to another, the administration of justice between members of the several tribes of said territory, and persons other than Indians and members of said tribes or nations, the construction of works of internal improvement, and the common defence and safety of the nations of said territory. All laws enacted by said general council shall take effect at such time as may therein be provided, unless suspended by direction of the Secretary of the Interior or the President of the United States. No law shall be enacted inconsistent with the Constitution of the United States, or the laws of Congress, or existing treaty stipulations with the United States, nor shall said council legislate upon matters pertaining to the organization, laws, or customs of the several tribes, except as herein provided for.

Powers of general council.

Fourth. Said council shall be presided over by the superintendent of Indian affairs, or, in case of his absence from any cause, the duties of said superintendent enumerated in this article shall be performed by such person as the Secretary of the Interior may direct.

Who to preside over council.

Fifth. The Secretary of the Interior shall appoint a secretary of said council, whose duty it shall be to keep an accurate record of all the proceedings of said council, and who shall transmit a true copy of all such proceedings, duly certified by the superintendent of Indian affairs, to the Secretary of the Interior immediately after the sessions of said council shall terminate. He shall be paid out of the treasury of the United States an annually salary of five hundred dollars.

Secretary of council.

Pay.

Sixth. The members of said council shall be paid by the United States the sum of four dollars per diem during the time actually in attendance on the sessions of said council, and at the rate of four dollars for every twenty miles necessar[il]y travelled by them in going to and returning to their homes, respectively, from said council, to be certified by the secretary of said council and the superintendent of Indian affairs.

Pay of members.

Seventh. The Creeks also agree that a court or courts may be established in said territory, with such jurisdiction and organized in such manner as Congress may by law provide.

Courts.

ARTICLE XI. The stipulations of this treaty are to be a full settlement of all claims of said Creek nation for damages and losses of every

This treaty to be a full settlement of all claims.

kind growing out of the late rebellion and all expenditures by the United States of annuities in clothing and feeding refugee and destitute Indians since the diversion of annuities for that purpose consequent upon the late war with the so-called confederate states; and the Creeks hereby ratify and confirm all such diversions of annuities heretofore made from the funds of the Creek nation by the United States, and the United States agree that no annuities shall be diverted from the objects for which they were originally devoted by treaty stipulations with the Creeks, to the use of refugee and destitute Indians other than the Creeks or members of the Creek nation after the close of the present fiscal year, June thirtieth, eighteen hundred and sixty-six.

Diversions of annuities.

Treaty obligations reaffirmed.

ARTICLE XII. The United States reaffirms and reassumes all obligations of treaty stipulations with the Creek nation entered into before the treaty of said Creek nation with the so-called confederate states, July tenth, eighteen hundred and sixty-one, not inconsistent herewith; and further agrees to renew all payments of annuities accruing by force of said treaty stipulations from and after the close of the present fiscal year, June thirtieth, eighteen hundred and sixty-six, except as is provided in article eleventh.

Lands granted for missionary or educational purposes;

not to be sold, except, &c.,

when sold, proceeds to be how applied.

ARTICLE XIII. A quantity of land not exceeding one hundred and sixty acres, to be selected according to legal subdivisions, in one body, and to include their improvements, is hereby granted to every religious society or denomination which has erected, or which, with the consent of the Indians, may hereafter erect buildings within the Creek country for missionary or educational purposes; but no land thus granted nor the buildings which have been or may be erected thereon shall ever be sold or otherwise disposed of, except with the consent and approval of the Secretary of the Interior; and whenever any such lands or buildings shall be so sold or disposed of, the proceeds thereof shall be applied, under the direction of the Secretary of the Interior, to the support and maintenance of other similar establishments for the benefit of the Creeks and such other persons as may be or may hereafter become members of the tribe according to its laws, customs, and usages; and if at any time said improvements shall be abandoned for one year for missionary or educational purposes, all the rights herein granted for missionary and educational purposes shall revert to the said Creek nation.

Inconsistent treaty provisions annulled.

ARTICLE XIV. It is further agreed that all treaties heretofore entered into between the United States and the Creek nation which are inconsistent with any of the articles or provisions of this treaty shall be, and are hereby, rescinded and annulled; and it is further agreed that ten thousand dollars shall be paid by the United States, or so much thereof as may be necessary, to pay the expenses incurred in negotiating the foregoing treaty.

Execution.

In testimony whereof, we, the commissioners representing the United States and the delegates representing the Creek nation, have hereunto set our hands and seals at the place and on the day and year above written.

D. N. COOLEY, [SEAL.]
*Comr. Ind. Affrs.*
ELIJAH SELLS, [SEAL.]
*Supt. Ind. Aff.*
OK-TA-HAS HARJO, his x mark. [SEAL.]
COW MIKKO, his x mark. [SEAL.]
COTCH-CHO-CHEE, his x mark. [SEAL.]
D. N. McINTOSH. [SEAL.]
JAMES M. C. SMITH. [SEAL.]

In presence of—

J. W. DUNN, *U. S. Indian Agent.*
J. HARLAN, *U. S. Indian Agent.*

HeinOnline -- 14 Stat. 790 1863-1867

CHARLES E. MIX.
J. M. TEBBETTS.
GEO. A. REYNOLDS, *U. S. Indian Agent.*
JOHN B. SANBORN.
JOHN F. BROWN, *Seminole Delegate.*
JOHN CHUPCO, his x mark.
FOS-HAR-JO, his x mark.
CHO-COTE-HUGA, his x mark.
R. FIELDS, *Cherokee Delegate.*
DOUGLAS H. COOPER.
WM. PENN ADAIR,
HARRY ISLAND, his x mark, *U. S. Interpreter, Creek Nation.*
SULUDIN WATIE.

And whereas, the said treaty having been submitted to the Senate of the United States for its constitutional action thereon, the Senate did, on the nineteenth day of July, one thousand eight hundred and sixty-six, advise and consent to the ratification of the same, with amendments, by a resolution in the words and figures following, to wit:— Ratification, with amendments.

IN EXECUTIVE SESSION, SENATE OF THE UNITED STATES,
July 19, 1866.

*Resolved*, (two thirds of the senators present concurring,) That the Senate advise and consent to the ratification of the treaty of cession and indemnity concluded at the city of Washington on the fourteenth day of June, eighteen hundred and sixty-six, by and between the United States, represented by their Commissioners, and the Creek nation of Indians, with the following

AMENDMENTS:

1st. Article III. line 21, after the word "paid," insert the words: in money and divided. *Ante*, p. 786.
" same line, strike out the words "in money."
2d " line 43, after the word "paid" insert the words: in money and divided. *Ante*, p. 787.
" same line, strike out the words "in money."
3d. Strike out all of Article VI. *Ante*, p. 788.

Attest: J. W. FORNEY, *Secretary.*

And whereas the foregoing amendments having been fully explained and interpreted to the aforenamed delegates at large and special delegates of the Creek nation of Indians and southern Creeks, they did, on the twenty-third day of July, one thousand eight hundred and sixty-six, give their free and voluntary assent to said amendments, in the words and figures following, to wit:— Amendments assented to.

Whereas the Senate of the United States did, on the 19th day of July, 1866, advise and consent to the ratification of the treaty of cession and indemnity concluded at the city of Washington on the 14th day of June, 1866, by and between the United States, represented by their Commissioners, and the Creek nation of Indians, with the following amendments, to wit:—

1st. Article III. line 21, after the word "paid" insert the words: in money and divided.
" same line, strike out the words "in money."
2d. " line 43, after the word "paid" insert the words: in money and divided.
" same line, strike out the words "in money."
3d. Strike out all of Article VI.

HeinOnline -- 14 Stat. 791 1863-1867

Now, therefore, we, the delegates representing the Creek Nation of Indians, do hereby assent and agree to the said amendments above written, the same having been interpreted to us and being fully understood by us.

Witness our hands and seals this 23d day of July, A. D. 1866, at Washington, D. C.

OK-TA-HAS-HARJO, his x mark. [SEAL.]
COW MIKKO, his x mark. [SEAL.]
COTCH-CHO-CHEE, his x mark. [SEAL.]
D. N. McINTOSH, [SEAL.]
JAMES M. C. SMITH. [SEAL.]

In presence of —

CHARLES E. MIX.
W. R. IRWIN.
LEWIS S. HAYDEN.
G. D. CURTIS.
GEO. A. REYNOLDS.
E. B. GRAYSON.
JOHN F. BROWN.
J. HARLAN, *U. S. Indian Agent.*
HARRY ISLAND, his x mark, *U. S. Interpreter for Creeks.*
ROBERT JOHNSON, his x mark, *U. S. Interpreter for Seminoles.*
JOHN CHUP-CO, his x mark.
FOS HARPO, his x mark.
CHO-COTE HARJO, his x mark.

Proclaimed.

Now, therefore, be it known that I, ANDREW JOHNSON, President of the United States of America, do, in pursuance of the advice and consent of the Senate, as expressed in its resolution of the nineteenth of July, one thousand eight hundred and sixty-six, accept, ratify, and confirm the said treaty with the amendments as aforesaid.

In testimony whereof, I have hereto signed my name and caused the seal of the United States to be affixed.

[SEAL.] Done at the city of Washington this eleventh day of August, in the year of our Lord one thousand eight hundred and sixty-six, and of the Independence of the United States of America the ninety-first.

ANDREW JOHNSON.

By the President:
HENRY STANBERY, *Acting Secretary of State.*

HeinOnline -- 14 Stat. 792 1863-1867

**EXHIBIT 7**
miscellaneous documents

No. 3283

Commission to the Five Civilized Tribes.

# APPLICATION FOR ALLOTMENT.

CREEK NATION.

MUSKOGEE LAND OFFICE

I, John M. Taylor do hereby make application to have set apart to m

and to those whom I lawfully represent, lands selected by me, as follows:

| Roll Number | NAMES | Relationship to Person First Named | SUBDIVISION OF | Section | Town | Range | Acres |
|---|---|---|---|---|---|---|---|
| 193 | John M. Taylor | | N. W. 1/4 of | 32 | 8 | 10 | 16 |
| 194 | Harriett " | wife | S. W. 1/4 of | 29 | 8 | 10 | 160 |
| 196 | Annie " | Dau | S. E. 1/4 of | 29 | 8 | 10 | 160 |
| 197 | Fross James " | Son | S. W. 1/4 of | 32 | 8 | 10 | 16 |
| 198 | Minnie " | Dau | N. E. 1/4 of | 32 | 8 | 10 | 160 |
| 199 | Harriett " | " | S. E. 1/4 of | 32 | 8 | 10 | 160 |

6150 6149 6148 6147 6146 6145

Canadian [illegible] Town.

| NUMBER. Last. | Present. | NAME. | | Per Capita. | Amount Paid. | SIGNATURES AND MARKS. | SIGNATURE OF WITNESS. | DATE OF RECEIPT. 1895 |
|---|---|---|---|---|---|---|---|---|
| 937 | 1 | Billy | Jones | 45 | 4440 | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 26th |
| 8 | 1 | Manda | Brown | 38 | | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 26th |
| 9 | 2 | Clifford | Brown | 38 | | | | |
| 938 | 3 | Walt | Brown | 38 | | | | |
| 1 | 4 | Maggie | Brown | 38 | | | | |
| 2 | 5 | Deborah | Brown | 38 | 4400 | | | |
| 3 | 1 | Joe | Taylor | 13 | 8640 | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 25th |
| 4 | 2 | Charley | Taylor | 13 | | | | |
| 5 | 3 | Ralph | Taylor | 13 | | | | |
| 6 | 4 | Daisy | Taylor | 13 | | | | |
| 7 | 5 | Emma | Taylor | 13 | | | | |
| 8 | 6 | Sheridan | McIntosh | 13 | 8640 | | | |
| 9 | 1 | John | Bruner | [illegible] | 4440 | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 26th |
| 940 | 1 | John | Taylor | 52 | 10540 | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 26th |
| 1 | 2 | Harriet | Taylor | 52 | | | | |
| 2 | 3 | Polly | Taylor | 52 | | | | |
| 3 | 4 | Annie | Taylor | 52 | | | | |
| 4 | 5 | James | Taylor | 52 | | | | |
| 5 | 6 | Maria | Taylor | 52 | | | | |
| 6 | 7 | William | Taylor | packet #1557 | | | | |
| 7 | 8 | Maggie | Taylor | [illegible] | | | | |
| 8 | 9 | Lucinda | [illegible] | | | | | |
| 9 | 10 | Alice | Kesler | 41 | | | | |
| 950 | 11 | Louisa | Kesler | 41 | 5840 | | | |
| | | Hazzel | Taylor | new born | | | | |
| 1 | 1 | A. W. | Bruner | [illegible] | 4320 | Levi Riley By T. Chief | his x mark Cornelius Carr | Oct. 26th |
| 2 | 2 | Hagar | Bruner | [illegible] | | | | |
| 3 | 3 | Eagle | Bruner | [illegible] | 4320 | | | |
| 4 | 1 | Jim | Carter | [illegible] | 5760 | H. C. Reed By T. Chief | his x mark Cornelius Carr | Oct. 25th |
| 5 | 2 | Susan | Carter | 1440 | | | | |
| 6 | 3 | John | Carter | [illegible] | | | | |
| 7 | 4 | George | Carter | 1440 | 5760 | | | |

- my absence. I suppose that
He has procured my name to you
at Holdenville. now I write to
ask you if my name was on the
list and if not what course
should I pursue. I am
an other Brother, George H. Taylor
who lives about 9 miles west of
Muscogee on Pecan Creek. of
whom you may seek information
if necessary. feeling that I am
sincerely indebted to you for the
information I am asking I
remain Sincerely Yours

Wm Taylor McGilbry

Answered Oct 25-97

Saying his name had been [illegible]

1 Stephen Samon,
2 Lucy Samon,
3 Henry Wilson.

1 Quash McGilbrey.

1 Prine Hawkins,
2 Sennett Hawkins,
3 Stidham Hawkins,
4 Sandy Hawkins,
5 Rosie Hawkins,
6 [illegible] Hawkins,
7 Botton Hawkins.

1 Rose Brown,
2 Ceasar James,
3 Cimme Brown,
4 Douglas Brown,
5 Hattie Brown,
6 Rachel Brown,
7 Sudie Brown. Rose

1 John Taylor,
2 Hattie [illegible]
3 Folley Taylor,
4 Annie Taylor,
5 Fross Taylor,

Authenticated Tribal Roll of Creek Nat 1890

1 Joe Taylor,
2 Charley Taylor,
3 Ralph Taylor,
4 Dasey Taylor,
5 Emma Taylor,

1 Mondy Brown, Mandy
2 Alfred Brown,
3 Wash Brown,
4 Maggie Brown,
5 Seabon Brown,
6 Jeff Brown,

1 Quash Ban.

1 Aaron Sango.

1 Ceasar Jefferson,
2 Tamer Jefferson,
3 Millie Jefferson,
4 Joe Jefferson,
5 Martha Jefferson,
6 Douglas Jefferson,
7 George Jefferson.

# CERTIFICATE OF DEATH

## Oklahoma State Board of Health

BUREAU OF VITAL STATISTICS

OKLAHOMA CITY, OKLAHOMA

Registration Dist. No. 55230 1/2

Primary Dist. No.

452 55 2815

Registered No. 38710

1 PLACE OF DEATH

City Oklahoma City (No. Univ. Hospital St., 800 E 13 St. Ward) (If death occured in a hospital or institution give its NAME instead of street and number.)

2 FULL NAME Anna Craig 620

**PERSONAL AND STATISTICAL PARTICULARS**

3 SEX: F

4 COLOR OR RACE: Colored

5 Single, Married, Widowed Or Divorced (WRITE the word): Married

6 DATE OF BIRTH: (Month) (Day) (Year)

7 AGE: 44 yrs. mos. ds. If less than 1 day hours or minutes

8 OCCUPATION
(a) Trade, profession or particular kind of work: Housewife
(b) General nature of industry, business, or establishment in which employed (or employer):

9 BIRTHPLACE (State or Country): Oklahoma

PARENTS

10 NAME OF FATHER: John M. Taylor

11 BIRTHPLACE OF FATHER (State or Country):

12 MAIDEN NAME OF MOTHER:

13 BIRTHPLACE OF MOTHER (State or Country):

14 THE ABOVE IS TRUE TO THE BEST OF MY KNOWLEDGE

(Informant)

(Address)

15 Filed Dec 30 1933 Ruth Brooks Registrar

**MEDICAL CERTIFICATE OF DEATH**

16 DATE OF DEATH: 12 (Month) 30 (Day) 33 (Year)

17 I HEREBY CERTIFY, That I attended deceased from 12-24-33 193 , to 12-30-33 193 that I last saw her alive on 12-30-33 193 and that death occurred on the date stated above at 5:30 a. m.

The CAUSE OF DEATH* was as follows:

Toxic Psychosis (Cause Undetermined)

94

(Duration) yrs. mos. ds.

Contributory (Secondary)

(Duration) yrs. mos. ds.

(SIGNED) X Warren Laughton, M. D.

1-10-34 193 (Address) Univ. Hospital.

*State the DISEASE CAUSING DEATH, or, in death from VIOLENT CAUSES, state (1) MEANS OF INJURY: and (2) whether ACCIDENTAL, SUICIDAL, or HOMICIDAL.

18. LENGTH OF RESIDENCE (For HOSPITALS, INSTITUTIONS, TRANSIENTS, or RECENT RESIDENTS)

At place of death yrs. mos. ds. In the State yrs. mos. ds.

Where was disease contracted, if not at place of death?

Former or usual residence: Sapulpa Okla

19 PLACE OF BURIAL OR REMOVAL: Sapulpa Okla

DATE OF BURIAL: 19

20 UNDERTAKER: Brown Funeral Home - Tulsa

ADDRESS: Oklahoma.

July 11, 2008

V. S. No. 2. (This Margin Reserved for Binding.)
WRITE PLAINLY, WITH UNFADING INK—THIS IS A PERMANENT RECORD.
N. B.—Every item of information should be carefully supplied. AGE should be stated EXACTLY. Physicians should state CAUSE OF DEATH in plain terms, so that it may be properly classified. Exact statement of OCCUPATION very important. See list of causes of death furnished by local registrar.

# CERTIFICATE OF DEATH

## Oklahoma State Board of Health

### BUREAU OF VITAL STATISTICS

Oklahoma City, Oklahoma

(414) Register No. 113

1. PLACE OF DEATH

County Hughes

Township 33—158

Village or 7 Mi East 3 North Holdenville

City ........ No. ........ Street ........ Ward ........

(If death occurred in a hospital or institution, give the name instead of street and number. If an industrial camp, the name of the camp to be given.)

Registration Dist. No.

Primary Dist. No.

2. FULL NAME of decendant, if an unnamed child, the surname, preceded by "unnamed" John Milton Taylor

**PERSONAL AND STATISTICAL PARTICULARS**

3. Sex. Male

4. Color or Race, as white, or black, mulatto (or other negro descent), Indian, Chinese, Japanese or other.

5. Single, Married, Widowed or divorced. Write the word

6. DATE OF BIRTH ........ (Month) (Day), 19.... (Year)

7. AGE 64 yrs. X mos. X days. If less than one days ...... hrs. or ...... mins.

8. OCCUPATION Farmer
(a) Trade, profession or particular kind of work........
(b) General nature of industry, business or establishment in which employed (or employer).

9. BIRTH PLACE. At least state or foreign country if known Okla

PARENTS

10. NAME OF FATHER Joseph Taylor

11. BIRTH PLACE OF FATHER At least state or foreign country if known Georgia

12. MAIDEN NAME OF MOTHER Julia Traylor

13. BIRTH PLACE OF MOTHER At least state or foreign country if known Okla

14. The above is true to the best of my knowledge.

Informant Robb Taylor

Address Holdenville #2

15. Filed ........, 19.....

........, Registrar.

**MEDICAL CERTIFICATE OF DEATH**

16. DATE OF DEATH Oct 5, 1921 (Month) (Day) (Year)

17. I HEREBY CERTIFY that I attended deceased, From 8.40 PM, 1921, to 9.45 PM, 1921 that I saw h... alive on 5 Oct, 1921 and that death occurred on the date stated above at 10 PM m.

THE CAUSE OF DEATH, *Was as follows:

Paralysis

........ (Duration) ...... yrs. ...... mos. ...... days

Contributory ........ (Secondary) ........

........ (Duration) ...... yrs. ...... mos. ...... days

(Signed) Dr. R. W. Patterson, M. D.

10/10, 1921 (Address) Wetumka

*State the disease causing death or, in deaths from violent causes; state (1) means of injury, and (2) whether accidental, suicidal, or homicidal state whether attributed to dangerous or insanitary conditions of employment.

18. LENGTH OF RESIDENCE (for Hospitals, institutions, transient or Recent Residents)

At place of death ........ yrs. ........ mos. ........ days

In the State ........ yrs. ........ mos. ........ days

Where was disease contracted, if not at place of death? Former or usual residence.

19. PLACE OF BURIAL OR REMOVAL Shiloh Cemetery

Date of Burial 10/6 1921

20. UNDERTAKER Ben Barnett Jr. Calvin

Address Holdenville Okla

July 11, 2008

*Abstract of claims for property lost by the loyal Creek Indians and freedmen in consequence of the war of the rebellion, 1861–1866, etc.*—Continued.

| No. | Name of claimant. | Sex. | Age. | Claim. | Award. | Remarks. |
|---|---|---|---|---|---|---|
| 595 | Jimmy Creek | Male | 27 | $4,100.00 | $1,375.00 | Refugee. |
| 596 | Simpson, Creek | do | 29 | 7,460.00 | 2,450.00 | Do. |
| 597 | Toat kis haljo, Creek | do | 32 | 8,425.00 | 1,127.50 | Soldier. |
| 598 | Sah yan, Creek | Female | 41 | 1,725.00 | 611.00 | Refugee, widow. |
| 599 | Ty yee, Creek | do | 35 | 931.00 | 271.00 | Refugee, spinster |
| 600 | Mat lee, Creek | do | 57 | 1,250.00 | 442.50 | Widow soldier. |
| 601 | Cho was tah emarthle, Creek | Male | 16 | 6,660.00 | 2,245.00 | Soldier. |
| 602 | Us se nine hola, Creek | do | 59 | 167.00 | 176.00 | Refugee. |
| 603 | Wox e haljo, Creek | do | 55 | 3,176.00 | 1,079.00 | Soldier. |
| 604 | Maria Noble, free colored | Female | 40 | 932.00 | 475.00 | Refugee, widow. |
| 605 | Hah chu nuppa, Creek | Male | 37 | 2,260.00 | 801.00 | Soldier. |
| 606 | Mic ke marthla, Creek | do | 33 | 5,646.00 | 1,986.00 | Do. |
| 607 | Yah ne e marthla, Creek | do | 35 | 4,280.00 | 1,191.50 | Do. |
| 608 | Ne ah haljo, Creek | do | 60 | 6,569.00 | 2,373.00 | Do. |
| 609 | Co nup hayo, Creek | do | 45 | 4,730.00 | 1,690.00 | Do. |
| 610 | Lo cho fixeco, Creek | do | 32 | 5,585.00 | 2,013.00 | Do. |
| 611 | Ah tue fixeco, Creek | do | 55 | 2,720.00 | 970.00 | Do. |
| 612 | He ne ho chee, Creek | do | 25 | 4,500.00 | 1,355.00 | Refugee. |
| 613 | Ho ful he nuah, Creek | do | 55 | 4,745.00 | 1,704.00 | Soldier. |
| 614 | Echo e fixeco, Creek | do | 48 | 3,295.00 | 1,111.00 | Do. |
| 615 | Foo hut e micco, Creek | do | 30 | 4,100.00 | 1,431.50 | Refugee. |
| 616 | Co no e chola, Creek | do | 30 | 10,759.00 | 1,024.50 | Do. |
| 617 | Pah ho sin neah, Creek | do | 25 | 2,745.00 | 863.00 | Do. |
| 618 | Se ba, Creek | do | 32 | 2,027.00 | 810.00 | Soldier. |
| 619 | Iah te haljo, Creek | do | 60 | 7,115.00 | 2,095.00 | Do. |
| 620 | Wm. Bruner, freedman | do | 33 | 1,288.00 | 627.00 | Do. |
| 621 | Sally Sancho, freedman | Female | 40 | 218.00 | 128.00 | Refugee, widow. |
| 622 | Aaron Sancho, freedman | Male | 33 | 460.00 | 180.00 | Soldier. |
| 623 | David McQueen, half-breed | do | 88 | 2,020.00 | 884.00 | Do. |
| 624 | Ah ke tin yah hola, Creek | do | 65 | 10,024.00 | 3,593.00 | Do. |
| 625 | Tick key, Creek | do | 27 | 2,250.00 | 810.00 | Refugee. |
| 626 | Co bik cho chee, Creek | do | 29 | 3,300.00 | 1,175.00 | Soldier. |
| 627 | See po hee, Creek | Female | 52 | 5,050.00 | 1,795.00 | Widow, soldier. |
| 628 | Hi ut kah, Creek | do | 43 | 5,179.00 | 1,750.00 | Do. |
| 629 | See o thle gee, Creek | do | 62 | 5,110.00 | 1,852.00 | Refugee, widow. |
| 630 | So ho e lahgee, Creek | do | 34 | 8,100.00 | 2,910.00 | Do. |
| 631 | Hosk te lay ney, Creek | do | 38 | 2,140.00 | 745.00 | Widow, soldier. |
| 632 | Ochee haljo, Creek | Male | 28 | 2,570.00 | 985.00 | Refugee. |
| 633 | Oak chun hayo, Creek | do | 27 | 5,986.00 | 2,147.50 | Do. |
| 634 | Ah see ho gee, Creek | Female | 41 | 5,250.00 | 1,875.00 | Refugee, widow. |
| 635 | Mis kah, Creek | do | 28 | 5,028.00 | 1,777.00 | Do. |
| 636 | Took ko e ho chee, Creek | do | 50 | 10,320.00 | 3,591.00 | Widow, soldier. |
| 637 | Los kee, Creek | do | 27 | 2,488.00 | 800.00 | Refugee, spinster. |
| 638 | No cose fixeco, Creek | Male | 40 | 3,256.00 | 1,100.00 | Soldier. |
| 639 | Hui hut e haljo, Creek | do | 40 | 6,665.00 | 2,510.00 | Refugee. |
| 640 | Jimmy, Creek | Female | 24 | 2,260.00 | 955.00 | Refugee, widow. |
| 641 | Yah cose yah hola, Creek | Male | 45 | 1,140.00 | 414.00 | As administrator. |
| 642 | Peter Wolf, freedman | do | 45 | 1,100.00 | 485.00 | Refugee. |
| 643 | Wicey, Creek | Female | 38 | 1,540.00 | 525.00 | Refugee, widow. |
| 644 | Winee, Creek | do | 70 | 2,495.00 | 995.00 | Do. |
| 645 | Morris McGillivray, free, colored | Male | 40 | 1,910.00 | .......... | No award. |
| 646 | Ah nee, Creek | Female | 80 | 1,015.00 | 400.00 | Refugee, widow. |
| 647 | Ok chi ah haljo, Creek | Male | 30 | 1,665.00 | 625.00 | Refugee. |
| 648 | Saml. Wade, freedman | do | 38 | 758.00 | 300.00 | Soldier. |
| 649 | Cho le fixeco, Creek | do | 35 | 2,225.00 | 788.00 | Do. |
| 650 | Ok cha e marthla, Creek | do | 60 | 4,625.00 | 1,580.00 | Do. |
| 651 | No cose micco, Creek | do | 23 | 4,206.00 | 1,511.00 | Refugee. |
| 652 | Yo hola chup co, Creek | do | 25 | 3,175.00 | 1,175.00 | Do. |
| 653 | Yahmudt hushartitee, Creek | do | 25 | 6,886.00 | 2,408.50 | Do. |
| 654 | Nah feet skah, Creek | Female | 40 | 2,430.00 | 911.00 | Refugee, widow. |
| 655 | E nah hin neah, Creek | Male | 36 | 4,364.00 | 1,568.50 | Soldier. |
| 656 | Sukey Barnett, Creek | Female | 25 | 6,180.00 | 1,713.00 | Refugee. |
| 657 | Timothy Barnett, Creek | Male | 10 | 561.00 | 222.50 | As administrator. |
| 658 | Littee fixeco, Creek | do | 25 | 3,400.00 | 1,260.00 | Refugee. |
| 659 | At der tu haljo, Creek | do | 32 | 6,305.00 | 2,127.00 | Soldier. |
| 660 | Cho fok emah, Creek | do | 48 | 7,147.00 | 2,705.00 | Do. |
| 661 | Co sa haljo, Creek | do | 32 | 5,805.00 | 1,513.00 | Refugee. |
| 662 | Rochael Yarger, freedman | Female | 50 | 1,311.00 | 517.00 | Refugee, widow |
| 663 | Siah Barnett, half-breed | Male | 45 | 1,111.00 | 460.00 | Refugee |
| 664 | Co yo lee, Creek | Female | 90 | 560.00 | 265.00 | Refugee, widow |
| 665 | Winnie McQueen, Creek | do | 70 | 1,922.00 | 690.00 | Do. |
| 666 | Jim Barnett, half-breed | Male | 30 | 1,670.00 | 670.00 | Soldier. |
| 667 | Sump see, Creek | do | 26 | 900.00 | 350.00 | Do. |
| 668 | Pah nee ky, Creek | do | 27 | 2,890.00 | 1,060.00 | Refugee. |
| 669 | Cæsar (Tulsey L. R.) | do | 26 | 2,020.00 | 760.00 | Do. |
| 670 | Pahlo se marth a, Creek | do | 38 | 2,650.00 | 910.00 | Soldier. |
| 671 | Char gee, Creek | do | 29 | 6,810.00 | 2,350.00 | Do. |
| 672 | Clo kus haljo, Creek | do | 37 | 2,545.00 | 885.00 | Do. |
| 673 | Tomsy, Creek | do | 30 | 13,000.00 | 4,375.00 | Refugee. |
| 674 | Nero, Creek | do | 6 | 12,240.00 | 4,256.00 | Soldier. |
| 675 | Nehahuchuchee, Creek | do | [illegible] | 1,950.00 | 675.00 | Do. |
| 676 | Sandy, Creek | do | [illegible] | 1,460.00 | 565.00 | Do. |
| 677 | Fee nah, half-breed | Female | [illegible] | 1,700.00 | 620.00 | Widow soldier. |

Creek Equalization

Ind

RECEIVED
[stamp: MISCELLANEOUS RECEIVED ... 1920 ... FIVE CIVILIZED TRIBES]

# PROOF OF HEIRSHIP

John M Taylor P. O. Holdenville, Okla. of lawful age, being first duly sworn, according to law, deposes and says that he is one of the surviving relatives and heirs at law of William McGilbra, who was a citizen of the Creek Tribe, Roll No. 5667; that the said William McGilbra, departed this life at or near New York City in the County of N.Y, in the State of xxx, on 1911 being 45 years of age at the time of his death.

The affiant further swears that the following is a true, correct and complete statement of the family history of said decedent, and shows who are the sole and only heirs at law.

Was the deceased allottee married or single? single If married, give name of husband or wife P. O. who was a citizen of Tribe, Roll No. Is such husband or wife now living? If dead, give date of death

If married more than once, so state, giving names and Roll Nos.

Did deceased allottee ever have any children? NO If so, how many?

If deceased allottees had children, name all of them, whether enrolled or not, both living and dead, and give all information called for in the following blanks.

| NAME OF CHILD | Age | Degree Indian Blood | D. C. Roll No. | POSTOFFICE | Living or Dead | If Dead Give Date |
|---|---|---|---|---|---|---|
| | | | | | | |

State below whether or not deceased children left descendants.

| | Name of Child | Age | Degree Indian Blood | D. C. Roll No. | Postoffice | Living or Dead | If Dead Give Date |
|---|---|---|---|---|---|---|---|
| Name of Deceased Son or Daughter | | | | | | | |
| Name of Deceased Son or Daughter | | | | | | | |
| Name of Deceased Son or Daughter | | | | | | | |

5667

| Name of Father and Mother of deceased allottee | Age | Degree Indian Blood | Roll No. | If dead, date of death | If living, present address |
|---|---|---|---|---|---|
| Father Joseph McGilbray | | Full | 680 | | |
| Mother Judy McGilbray | | F | | | |

Name all brothers and sisters, including half brothers and sisters, whether living or dead, and give the information called for in the blank forms. If half brother or sister STATE WHETHER MATERNAL OR PATERNAL.

| Names of Brother or Sister | Age | Degree Indian Blood | Roll No. | If dead, date of death | If living, present address |
|---|---|---|---|---|---|
| Samuel Taylor | | F | | | |
| Jackson Taylor | | F | 447 | | |
| William McGilbray | | F | 5067 | | |
| Robert Taylor | | F | 149 | | |
| Katie McGilbray | | F | N.E. | | |
| Bettie Taylor Nobler | | F | 153 | | |
| Maggie Durant | | F | 4755 | | |
| | | | | | |
| | | | | | |
| | | | | | |

State below IF ANY DECEASED BROTHERS OR SISTERS HAD CHILDREN. Name each one, whether living or dead, and give the information called for in the blank form.

Name of deceased brother or sister Samuel Taylor

| Name of husband, or wife and children | Age | Degree Indian Blood | Roll No. | If dead, date of death | If living, present address |
|---|---|---|---|---|---|
| Name of husband or (wife): Ann Taylor | | | | deceased | |
| Rebecca Taylor James | | | | — | |
| Emma Taylor Brooks | | | | — | |
| Charley Taylor | | | | — | |
| Daisy Taylor Carter | | | | | |
| Ralph Taylor | | | | | |
| Joseph Taylor | | | | | |

Name of deceased brother or sister Katie McGilbray Garrett

| | | | | | |
|---|---|---|---|---|---|
| Name of (husband) or wife: Willie Garrett | | | | | |
| Phillip Garrett | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Name of deceased brother or sister Jackson Taylor

| | | | | | |
|---|---|---|---|---|---|
| Name of husband or (wife): Jane Taylor | | | | | |
| Crawford Taylor | | | | | |
| Grace Taylor | | | | | |
| George Taylor | | | | | |
| John Taylor | | | | | |
| Pat & Pearle Taylor | | | | | |

If the father or mother of the decedent is dead and SAID DECEDENT had no brothers or sisters, give the information called for in the three groups of blanks following:

| Name of Grandfather & Grandmother | Age | Degree Indian Blood | Roll No. | If dead, date of death | If living, present address |
|---|---|---|---|---|---|
| Paternal Grandfather George Taylor | | | | | |
| Paternal Grandmother Not known | | | | | |
| Maternal Grandfather Morris Sango | | | | | |
| Maternal Grandmother Lucinda Sango | | | | | |

13

Jul-17-08 10:09am From-VCA SUPPORT 310 571 6740 T-776 P 013/016 F-068

67

# Application for Equalization Payment Creek Nation

**USE INK IN PREPAIRING**

I hereby apply for the following shares of the Creek Equalization Payment to the members of the Tribe to which I belong:

| ADULTS | | | | | TO BE FILLED OUT BY DISBURSING OFFICER ONLY | | | |
|---|---|---|---|---|---|---|---|---|
| NAME | Degree of Blood | Age | Sex | D. C. Roll No. | Present No. | Date Paid | Check No. | Amount |
| Joseph Taylor<br>Citizen of Creek Nation | Freedman | | M | | | | | 128 00 |
| Wife<br>Citizen of Creek Nation | | | Dead | | | | | |

| ENROLLED MINOR CHILDREN LIVING WITH AND SUPPORTED BY ME | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| NAME | Degree of Blood | Age | Age | D. C. Roll No. | Present No. | Date Paid | Check No. | Amount |
| <br>Court Guardian, if any | | | | | | | | |
| <br>Court Guardian, if any | | | | | | | | |
| <br>Court Guardian, if any | | | | | | | | |
| <br>Court Guardian, if any | | | | | | | | |
| <br>Court Guardian, if any | | | | | | | | |

Remarks

I certify that the above statement is true and correct; that I am the identical person enrolled opposite Daws Commission Number shown above and am living with my husband or wife, as stated, that the children listed as living claimants are in my custody and being cared for and supported by me, with the exceptions noted, and that the funds due them, if paid throngh me, will be used for their exclusive benefit; and that to the best of my knowledge there is no legal guardian appointed for any of said minors, except as indicated.

**Witness to Signature and Indorsed and Identified by**

Occupation

P. O.

Occupation

✓

(Signature of Applicant)

Make thumb mark here

If applicant cannot write

P. O. ____________ Oklahoma.

**Name of Parents or Enrolled Member of Family**

____________ Relation ____________

Holdenville, Ind. Ter. *Application No* [illegible]

DEPARTMENT OF THE INTERIOR.

COMMISSION TO THE FIVE CIVILIZED TRIBES.

# CREEK NATION.

**To the Clerk of the Land Office at Muskogee:**

*This is to certify that the name of* John M. Taylor *Age* 40

*and the names of the following* five *persons, whom he represents, to-wit:*

| NAMES. | Relationship to Person First Named. | AGE. |
|---|---|---|
| Harriett Taylor | Wife | 39 |
| Annie " | Dau. | 15 |
| Eross James " | Son | 12 |
| Minnie " | Dau. | 10 |
| Harriett " | " | 2 |

*All appear on* Freedman *Census Card of the Creek Nation, field No.* 52 *of record in the office of the Commission to the* ~~*Five*~~ *Civilized Tribes.*

*Muskogee, Indian Territory,* Dec. 11th *, A. D. 1899*

[illegible]